## Overton v. Commonwealth.

(Decided February 12, 1924.)

### Appeal from Bell Circuit Court.

1. Homicide—Evidence Held to Sustain Conviction for Malicious Shooting.—Evidence held sufficient to sustain a conviction for unlawfully, willfully, and maliciously shooting at another with intent to kill her, but without wounding her.

2. Criminal Law—Commonwealth and Court Not Bound by Agreement to Dismiss.—Aside from the unlawfulness of an agreement by members of two factions to dismiss indictments, such an agree-

ment is not binding upon the court or the Commonwealth's attorney.

3. Criminal Law—One Claiming Surprise Must Ask Continuance.—If an accused was surprised by prosecution, and unready for trial because of an agreement to dismiss the indictment, he should have asked a continuance on that ground, supported by affidavit, or left the question as to whether the alleged agreement should be carried out to the decision of the trial court, and he was estopped after conviction to demand a new trial on the ground of surprise, where he announced himself ready for the trial that at once began.

4. Criminal Law—Claim of Surprise Cannot be First Made on Motion for New Trial.—A claim of surprise cannot be first made on a motion for a new trial, it being the duty of the accused when surprised by the evidence of the Commonwealth to at once make it known to the court, and by proper motion and showing of necessary facts apply for a continuance.

5. Criminal Law—No New Trial for Cumulative or Impeaching Newly Discovered Evidence.—Court did not err in denying a new trial for newly discovered evidence, which would either contradict certain statements, mainly collateral or irrelevant, made by prosecuting witness in testifying for the Commonwealth, or impeach her reputation for veracity.

6. Criminal Law—Newly Discovered Evidence Must be of Weighty and Convincing Character.—To authorize a new trial, newly discovered evidence should be of such a weighty and convincing character as to have a decisive influence on the evidence to be overthrown by it.

W. T. DAVIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Sillus Overton, was tried and convicted in the court below of the offense, duly charged by indictment, of "unlawfully, wilfully and maliciously" shooting at Sarah Partin "with intent to kill her, but without wounding her." His punishment was fixed by the verdict of the jury and judgment of the court entered thereon at confinement of two years in the penitentiary. He was refused a new trial and has appealed.

Sarah Partin is the wife of Lenard Partin and she and her husband reside near the appellant. The evidence furnished by the Commonwealth's two witnesses, Partin and wife, was to the effect that the appellant went to their home about four o'clock in the afternoon of

April 28th, 1923, and, without giving a reason for the visit, remained until eight or nine o'clock that night, but declined an invitation from Lenard Partin to take supper with the family, which they ate while he was there. He appeared to be under the influence of an intoxicant, as during the meal he sat with his head resting on the back of a chair as if asleep.  Before leaving the Partin home and while the husband was out cutting some wood to replenish the fire in the family room, the appellant began to abuse Mrs. Partin by applying to her vile epithets, cursing and threatening to shoot her and drawing upon her a pistol.  During this misconduct of the appellant toward the wife the husband re-entered the room carrying firewood and the axe used in cutting it. He then heard some of the appellant's abuse of and threats against his wife and saw the pistol in his hand, and immediately interfered for her protection by getting between her and the appellant with the axe in his hand and ordering the latter from the house, which command he with apparent unwillingness obeyed; but upon getting in the yard twenty or thirty steps from the house and seeing Mrs. Partin standing on the porch and the husband in the door watching him, he pointed the pistol toward her and fired two shots at her and then took his departure.  The bullets thus fired from the pistol struck and entered the corner of the porch, one of them within eight inches of her feet.

According to the further testimony of the Partins the appellant, after apparently leaving the premises following the two pistol shots at Mrs. Partin, in a few minutes returned to their home and, without announcing his presence, opened the door with pistol in hand, and entered the room where they were sitting, saying "he generally conquered where he went," and again began and continued while present his abuse of Mrs. Partin, which the husband, being unarmed, was powerless to prevent.

The appellant in testifying in his own behalf. admitted that he visited the home of the Partins at the time indicated by them, the quarrel he there had with Mrs. Partin and the drawing of his pistol on her, but claimed that the altercation had its origin in her abuse of his aunt, Mrs. Amanda Henderson, which he resented; and that he did not draw his pistol upon or threaten to shoot Mrs. Partin until she drew upon him a butcher knife and backed him into a corner.  That her husband then came

into the room with some wood and an axe and he (appellant) told Mrs. Partin if she would let him out he would go off; and that he then went out of the house and was followed by Partin and wife to the porch. He also admitted that after leaving the house and when about thirty or forty feet therefrom, he fired two shots from his pistol, but denied that the shots were fired at the Partins, or either of them, and claimed that they were fired in the ground in front of him; that the bullets used with his pistol and with which it was then loaded were made of hard metal, whereas those the Partins testified were found in their porch, were made of lead, which were not, and could not have been, fired from his pistol. The appellant likewise admitted his quick return the same night to the home of the Partins. He denied, however, that he entered the house with his pistol in his hand, or then said he "generally conquered where he went," or that he renewed the quarrel with Mrs. Partin; and stated that he found at the Partins one or more visitors who had in the meantime arrived, with whom he pleasantly talked for awhile and then went to his home.

After the introduction for the appellant of one Riddo Bostich, whose testimony offered to impeach the general reputation of Sarah Partin proved to be incompetent and for that reason was excluded, Sarah Partin was recalled as a witness by the appellant to lay the foundation for contradicting her, for which purpose she was asked if she did not at a time indicated, state to Millard and Albert Overton, brothers of the appellant, she was going to bring the appellant, or the latter and his wife, "to dry bread," in answer to which she denied making such statement. Thereupon she was asked by the Commonwealth's attorney in rebuttal of the appellant's testimony and to contradict him, whether she drew a butcher knife on the appellant in the quarrel between them at her home, as testified by him. And also whether, as he had testified, she had been hired by Jim Hamlin and Bill Henderson "to make this case against him." To each of which questions her answer was a denial; and in giving her answer to the first of them she added the statement that she had never owned a butcher knife.

Upon being introduced as witnesses by the appellant, his brothers Millard and Albert Overton, both testified that Sarah Partin did say to them after the difficulty with appellant at her home she was going to bring the latter to "dry bread." Jim Hamlin and Bill Hen-

derson were then introduced by the Commonwealth in rebuttal, each of whom testified that he had not instigated or had anything to do with the prosecution of the appellant by Sarah Partin in this case, and Henderson added to that statement the further one that he had advised her not to do so. The only remaining witness introduced was Ridda Bostick, recalled by the appellant, who testified as to certain statements claimed to have been made to her by Henderson about the Overtons, which the trial court excluded as incompetent, to which ruling the appellant failed to take an exception.

It is manifest that much of the testimony of the Partins was, as we have seen from appellant's testimony, admitted by him and other parts thereof not denied. That is he failed to deny their statements that he was intoxicated on the occasion in question, that his difficulty in the house with Mrs. Partin on the first visit was stopped by the interference of her husband armed with the axe and his command to him to leave the house, or that his return to and re-entry into the house was, unannounced by him before walking into the room. In view of the foregoing facts and accompanying circumstances disclosed by the evidence, the conclusion cannot be escaped that as a whole it conduced to establish the appellant's guilt of the offense charged.

Only two of the grounds urged for a new trial in the court below are relied on by the appellant for the reversal by this court of the judgment of conviction, viz.: (1) Surprise resulting to him on the trial of the case. (2) The discovery by him, since the trial, of new and material evidence . The surprise alleged is indefinitely set forth by the appellant's affidavit on the motion for a new trial, but we infer from its statements that it was claimed to have been caused partly on account of his being subjected to trial at all, and partly by reason of certain unexpected testimony in behalf of the Commonwealth. The first of these alleged causes of surprise was based on the claim that inasmuch as by a previous arrangement between the appellant and others of his faction, and the Hendersons and others of a different faction, it was agreed, with the concurrence of the county judge, that numerous indictments pending against divers members of each faction should be dismissed and the feud between the two factions brought to an end, he supposed the indictment against him in this case would be dismissed.

As it was not shown that the Partins, witnesses for the Commonwealth in this case, belonged to either of the factions mentioned, or were parties to their agreement, we fail to see how the agreement referred to could affect them or the case in which they were witnesses. Besides, saying nothing of the unlawfulness of such an agreement as calculated to thwart justice, it is clear that neither the circuit court in which the indictment in this prosecution was pending, nor the Commonwealth's attorney of the judicial district was in any way bound by its terms; moreover, if by reason of such agreement the appellant was misled, surprised, or made unready for trial, when this case was called for that purpose, he should have asked a continuance on that ground supported by his affidavit, or left the question as to whether the alleged agreement should be carried out to the decision of the trial court. But instead of taking either of these steps and excepting to the ruling of the court, had a continuance been refused, it appears from the record, that upon the calling of the case for trial, which was six months after his indictment, during which time he was on bail, the appellant announced himself ready for the trial that at once began. Obviously, such action on his part estopped him to demand a new trial on the ground of the surprise first indicated.

The further surprise claimed to have been experienced by the appellant as arising out of the introduction by the Commonwealth of certain evidence alleged to be untrue and wholly unexpected to him, was also insufficient to entitle him to the new trial moved for in the court below. Without stopping to discuss the evidence contained in the affidavits and by which the appellant claimed he could on a new trial refute that of the Commonwealth referred to, it only needs to be said the authorities are uniform in holding that a claim of surprise cannot be first made on a motion for a new trial. It is the duty of the accused, when surprised by the evidence of the Commonwealth, to at once make it known to the court and by proper motion and showing of necessary facts apply for a continuance, instead of electing, as did the appellant in this case, to await the result of the trial. Lewis v. Comlth., 190 Ky. 160; Sizemore v. Comlth., 189 Ky. 46; Dennison v. Comlth., 198 Ky. 376.

The alleged newly discovered evidence constituting the remaining ground urged by the appellant for the reversal of the judgment, did not, in our opinion, entitle

him to the new trial moved for and refused in the court below. It appears from the affidavit of the appellant and those of several witnesses through whose testimony it is claimed the newly discovered evidence can be produced, that its object would be either to contradict certain statements, mainly collateral or irrelevant, made by Sarah Partin in testifying for the Commonwealth, or to impeach her reputation for veracity; therefore such evidence would be wholly cumulative. In addition, it does not clearly appear from the statements of the appellant's affidavit or those of the new witnesses that this evidence might not, by reasonable diligence on his part, have been discovered by him in time for its use on his recent trial. It is a well recognized rule in this jurisdiction that a new trial will not be granted on account of newly discovered evidence which merely tends to impeach or discredit an opposing witness, or is only cumulative. And in May v. Comlth., 153 Ky. 142, speaking of this rule, we said:

> "In other words, to authorize a new trial the newly discovered evidence should be of such a weighty and convincing character as to have a decisive influence on the evidence to be overthrown by it." Ellis v. Comlth., 146 Ky. 715; McElwain v. Comlth., 146 Ky. 104; Robinson v. Comlth., 146 Ky. 291; Dennison v. Comlth., 198 Ky. 376; Colson v. Comlth., 200 Ky. 402.

The alleged newly discovered evidence presented by the appellant in support of his motion for a new trial was not of the character required by the rule, *supra*.

As the record presents no sufficient reason for disturbing the verdict, the judgment is affirmed.