## Garcie and Floyd Roberts, Bevins and McCoy v. Commonwealth.

(Decided February 5, 1926.)

### Appeal from Pike Circuit Court.

1. Homicide—Peremptory Instruction should Have Been Given for Defendant.—In prosecution of four defendants for murder, a peremptory instruction should have been given for one defendant because of lack of evidence to connect him with the crime.

2. Homicide—Commonwealth Must Prove Accused was Aider and Abetter by Some Testimony, though it May be Circumstantial.—In prosecution of four defendants for murder, it devolved upon Commonwealth to prove its case against one of such defendants as an aider and abetter by some testimony, though it may do so by circumstantial evidence.

3. Homicide—Peremptory Instruction Should Have Been Given for Defendant who was Not Shown to Have Encouraged Principals by Overt Act or Expression of Advocacy or Sympathy.—In murder trial a peremptory instruction should have been given for a defendant who was present at commission of offense but who was not shown to have entered into any prior agreement with codefendants or to have encouraged principals in commission of homicide by some overt act or expression of advocacy or sympathy.

4. Criminal Law—For Jury to Say which Set of Witnesses They Believed.—In murder trial, where defense by two defendants was an alibi, it was for jury to determine which set of witnesses they believed.

5. Homicide—Evidence Held to Support Conviction for Voluntary Manslaughter.—In prosecution against four defendants for murder, evidence held to support conviction for voluntary manslaughter as against two defendants.

6. Criminal Law—Affidavit for New Trial Should Set up Facts Showing Why Newly Discovered Evidence Could Not Have Previously Been Discovered.—In prosecution for murder, affidavit to effect that defendants were unable to discover newly discovered evidence before trial by exercise of due diligence, stated merely a conclusion, and such affidavit should have set up facts showing why defendants could not have previously discovered such evidence.

7. Criminal Law—When New Trial on Ground of Newly Discovered Evidence Authorized, Stated.—To authorize a new trial on ground of newly discovered evidence, such evidence must be such as to satisfy court that if heard by jury along with other evidence a different verdict would have been returned.

8. Criminal Law—Newly Discovered Evidence Merely Corroborative and Cumulative Will Not Warrant New Trial.—If newly discovered testimony be merely corroborative and cumulative, it will not warrant a new trial, especially if it be not of such controlling character as would probably change verdict.

9. Criminal Law—Newly Discovered Evidence Held Not to Authorize Granting of New Trial.—In prosecution for murder affidavits as to seeing defendants on night of homicide held not to authorize granting of new trial for newly discovered evidence, as it was merely cumulative and matters alleged could have been true and yet defendants could have committed homicide, so that it would not necessarily have changed the verdict.

10. Criminal Law—Instruction that Defendants Should be Found Guilty if They Willfully Shot Deceased Not Erroneous, where Supplemented by Instructions as to Malice Aforethought.—In murder prosecution, instruction, if defendants not in necessary or apparently necessary self-defense willfully shot deceased they should be found guilty, held not erroneous in omitting words "maliciously and with malice aforethought" after word "willfully," where court subsequently supplied such element by instructing that defendants should be found guilty of willful murder if act was done with "malice aforethought."

STATON & KEESEE for appellants.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Dietzman—Reversing as to appellants, Bevins and McCoy, and affirming as to appellants, Garcie and Floyd Roberts.

The four appellants herein were indicted for the murder of Ora Kimble and on their trial were found guilty of voluntary manslaughter and each sentenced to twenty-one years in the penitentiary. To properly get at their contentions on this appeal it will be necessary to summarize the testimony of each witness, at least so far as that of the Commonwealth is concerned.

Freeland Staton testified, in substance, that on the night of January 31, 1925, he and Ora Kimble, who lived near Stringtown in Pike county, Kentucky, went to visit their kinsman, John McCoy, who lived nearby. On their way two men, one of whom he recognized as the appellant, Floyd Roberts, but the other of whom he could not identify, came out of a hollow. These two men followed them down the road. After visiting for about an hour at the home of John McCoy, he and Kimble started home. They had gotten up the road some little distance when two men came up to them. These were the appellant, Floyd Roberts, and another man whom he did not recognize. Floyd halted them and when Kimble stepped towards Floyd he went for his gun. At this instant two other men came up. These were the appellants, Landon Bevins and Garcie Roberts. The latter commanded Kimble to stop and then made for his gun. At this, the witness Staton went up the road about two hundred feet away from the crowd and turned around. Just as he did so the shooting started and at about the third shot he heard Kimble say: "Lord have mercy—come to me, buddy." Instead of doing so the witness fled up the road from the scene. He also says that Kimble had a pistol but it had but one cartridge in it. It may be said in passing that one of appellants' witnesses testified that this gun was found at the scene of the shooting with one cartridge in it and that unexploded. Kimble was shot several times in the back. The witness, John McCoy, says that he was at his home and just after Staton and Kimble left he heard some shots fired out in the road; that he went to the door of his house, located some little distance away from the public road, and saw four men going down the road, and that he heard them laughing and talking. When asked if he knew who they were, he said he thought he did but he would not swear who they were. He fur-

ther says that there were about six shots fired, and then three shots, the last shots being different in sound from the first shots, and seemed to have come from a high-powered gun, whereas the first shots seemed to have come from a pistol. The witness, Lizzie McCoy, wife of John McCoy, says she was at home; that she heard a great many shots in the road; that she got up and went to the door and saw four men passing down the road; that she recognized the voices of Floyd and Garcie Roberts, and there were two other men with them. When asked how many of them she knew, she said: "Two of them" (obviously the two referred to) "but there were four of them." She also says that she heard Floyd say: "I did not think about killing the G— d— s— of a b—;" and then Garcie say: "I knew that you had killed him when he said, 'Lord have mercy—come to me, buddy.'" The two witnesses, Ezra Phillips and Rolin McCoy, testify only that they saw Garcie Roberts and Floyd Roberts walking behind Staton and Kimble when they were on their way to the McCoy house. There was other testimony from these witnesses and also from the witness, Kennis Staton, in rebuttal that there was ill feeling between Kimble and the Roberts boys. The defense testimony was an *alibi* for all four men. The Roberts boys and their witnesses say that these boys reached home about nine o'clock and remained there until eleven o'clock, when they were informed by Harrison McCoy and others that Kimble had been killed about ten o'clock; that thereupon the Roberts boys got up, dressed and went over to the home of Bevins to tell him the news; that they then returned home, where they remained until morning, although they do not seem to have disrobed. Bevins' testimony and that of his witnesses is that he was at his home during the entire evening, and the same is true of the evidence of Letcher McCoy.

It is first insisted by the appellants that their several motions for a peremptory instruction should have been sustained. It is clear that as to Letcher McCoy such motion should have been sustained. No one in all the testimony says that he was present at the time of the shooting or was with these boys that night, except John McCoy, who in a very vague statement deposes that he thought he recognized Letcher McCoy on this occasion. So uncertain, however, was he in this recognition that several times during the course of his examination he said he was not willing "to swear to it that he recog-

nized Letcher McCoy." It is only this statement which, in any way, connects Letcher McCoy with this homicide. Men's lives and liberty can not be jeopardized by such testimony. It is too vague and unsatisfactory on which to base an imprisonment of any length of time let alone twenty-one years of a man's life. As to Letcher McCoy the judgment is reversed.

With regard to the appellant, Bevins, the only evidence that connects him with this homicide is the testimony of Freeland Staton, who says that Bevins was with the Roberts boys when the latter halted him and Kimble; the testimony of John McCoy, who says that he thought he saw Bevins going down the road with the Roberts boys but he would not swear to it; and lastly the testimony of the Roberts boys that after they were informed of the death of Kimble they got up in the middle of the night and went over to Bevins' house to tell him about it. No one testifies about any ill feeling between Bevins and Kimble or suggests any reason why he should have sought the life of the deceased. No one says that Bevins was armed on this occasion or that he fired any shot or that he counseled or advised the Roberts boys in any shooting or did anything except to be present at the time the homicide was committed. Giving the Commonwealth's testimony all the weight that can be given it, we have the question presented whether or not just the mere presence at a homicide in company with those who do commit the homicide is enough to create the presumption that such bystander aided or abetted the homicide. Although it may do so by circumstantial evidence, it devolves on the Commonwealth to prove its case by some testimony. In the case of Bradley v. Commonwealth, 201 Ky. 413, 257 S. W. 11, we said:

"In order to constitute one an aider or abetter in the commission of a crime he must be actually or constructively present at the time of its commission and participate in some way in the act committed. It is not essential that there should be a prearrangement or mutual understanding or concert of action, but in the absence of these it is essential that the one so charged should in some way either by overt act or by expression or advocacy or sympathy encourage the principal in his unlawful acts."

The same rule was followed in Smiddy v. Commonwealth, 210 Ky. 359, 275 S. W. 872. See also Butler v.

Commonwealth, 2 Duvall 435; Levering v. Commonwealth, 132 Ky. 666. Applying the rule thus established to the facts proved by the Commonwealth before us, we find that it is true that Bevins was present when Kimble was killed, but there is no proof of any prearranged agreement between him and his coappellants concerning the trouble which arose. In the absence of proof of such mutual understanding or concert of action, it then became necessary to show that by some overt act or some expression of advocacy or sympathy he encouraged the principals in the commission of this homicide. There being a total failure of proof along this line, the court should have sustained the motion of Bevins for a peremptory.

As to the appellants, the Roberts boys, it is clear there is no merit in their contention that a peremptory instruction should have been given. There was abundant testimony on the part of the Commonwealth to establish that these Roberts boys halted the deceased; that each of them went for his gun; that there was a number of shots fired which came from different guns; that there was ill feeling between them and Kimble; and that on their way from the scene of the homicide they were heard discussing it and one of them admitting he had done it. Although it is true the Roberts boys offered testimony tending to establish an *alibi,* it was for the jury to say which set of witnesses they believed. Holcomb v. Commonwealth, 207 Ky. 372, 269 S. W. 349. Therefore, there is no merit in their contention that their motion for a peremptory should have been sustained.

The next contention of the Roberts boys is that they were entitled to a new trial on the ground of newly discovered evidence. In support of this ground they filed their affidavit that they had been unable to discover this testimony before the trial by the exercise of due diligence. This statement is only a conclusion on their part. They should have set up the facts showing why they could not have previously discovered this evidence. But beyond this, the evidence thus alleged to have been discovered did not warrant the granting of a new trial. It consisted of the affidavit of Melda Chapman, which only affected the case of Landon Bevins, and that is reversed anyhow; the affidavit of Eligia Branham, which only affected the case of Letcher McCoy, and that is also reversed; the affidavits of E. D. Prisintine, who says that he saw the Roberts boys going by the Tom McCoy store

about nine o'clock and he saw them no more that night; the affidavit of Charlie Purkey that he saw them pass the McCoy store about nine o'clock, and that about eleven o'clock he saw them in their home as he passed by; also the affidavit of Scott Walford to the same effect as the one of Purkey. The rule is that to authorize a new trial on the ground of newly discovered evidence, this evidence must be such as to satisfy the court that, if heard by the jury along with the other evidence, a different verdict would have been returned. Hall v. Commonwealth, 207 Ky. 718, 270 S. W. 5. It is also the rule that if the newly discovered testimony be merely corroborative and cumulative it will not warrant a new trial, especially if it be not of such controlling character that it would probably change the verdict. Daniels v. Commonwealth, 194 Ky. 513, 240 S. W. 67. Measured by these rules, the newly discovered evidence here did not authorize the court to grant a new trial. It was cumulative, as other witnesses did testify on the trial to the same effect. It was not controlling because it could have been true and yet the Roberts boys between the times these witnesses say they saw them could have committed the homicide. We are not satisfied that if heard by the jury, this evidence along with what was heard would have turned the result from a verdict of guilty to that of innocence.

The next complaint is concerning the instructions. They say that in instruction No. 1 the court neglected to use the words "maliciously and with malice aforethought" after the word "wilfully" in that part of the instruction in which in substance it told the jury if they, the defendants or any of them, not in his necessary or apparently necessary self-defense or the necessary or apparently necessary defense of any of the other defendants, wilfully shot Ora Kimble, they should find them guilty. But the appellants failed to note that in so instructing the jury the court went on to say that they should find them guilty of wilful murder if the act was done with "malice aforethought," thus supplying the element which they say was necessary to make a good instruction. We find no merit in the other criticisms of the instructions, which seem to have submitted admirably the essential issues in this case, and are in the form which has been approved time and again by this court.

A great many objections are made with reference to the testimony, but since Letcher McCoy and Landon Bevins have been eliminated from the case, whatever may

have been not wholly relevant or competent as to the Roberts boys was not prejudicial. There was abundant competent testimony to sustain the verdict, and in many instances the irrelevant testimony offered by the Commonwealth was shown to be true and correct by testimony brought out by the defense.

No error appearing prejudicial to the substantial rights as to the Roberts boys, the judgment as to them is affirmed.