## Brewer v. Commonwealth.

(Decided February 19, 1929.)

WILKINS, SPARKS & JONES for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

Ed Brewer and Oscar Divine were indicted for the crime of grand larceny. A separate trial was demanded, and the commonwealth elected to try Brewer. He was convicted, and a sentence of imprisonment for four years imposed upon him. A new trial was requested and refused, and Brewer has prosecuted this appeal. Numerous grounds were assigned in the motion for a new trial, but reliance is now rested upon but two claims of error. First, it is urged that the evidence was not sufficient to sustain the verdict, and, second, that a new trial should have been granted because of newly discovered evidence of vital importance. The contentions necessitate a rather full statement of the facts adduced.

Arthur O'Neil lent his Ford coupe to his brother-in-law, Creasy, to use on his prospective honeymoon. Creel, a friend living in the village of Cleaton, gave a party in honor of Creasy and his fiancee. Brewer and Divine, with many others, attended the party. The Ford coupe was parked in front of the Creel home in Cleaton. It was

stolen during the night, and it was for this theft that Brewer was convicted. The case for the commonwealth depends upon the testimony of Toy Edwards and Cleve Berry. Edwards testified that, while his home was in Todd county, he stayed at Cleaton most of the time, and had worked there for four years. He was asleep at the home of Cleve Berry when Oscar Divine came, called him out, and employed him for $5 to drive a car to Madisonville. He overtook Divine and Brewer at Central City riding in a Ford coupe. The car he was driving for Divine broke down, and it was then that Divine directed Edwards to take the Ford coupe to his father's home in Todd county, to remain there two or three days, and then to bring it back. Brewer and Divine were left at Bremen, or Central City, to have the broken car repaired. Edwards failed to bring the car back from Todd county, where he had arrived on Wednesday, which he explained by saying that a rain rendered the roads impassable. The stolen car was found on Sunday at the home of Edwards' father. Edwards said he was told by Oscar Divine that the car was his, and he knew nothing of it being stolen. He said it carried a single Daviess county license tag.

Upon cross-examination, Edwards said he arrived at his father's home in Todd county about 10:00 or 11:00 o'clock on Wednesday morning, and came back to Cleaton on Friday without the car, because he could not drive it in the mud. He returned to his father's home, a distance of 16 miles, on the same day. Edwards said, when the car was turned over to him, the windshield was broken and one door was locked. He further testified that the car did not carry a spare wheel. It was shown by others that, when the car was stolen, it had an extra wheel, and, when it was recovered at the home of Edwards the spare wheel was missing. Cleve Berry testified that Edwards was at his home in Cleaton on a night about the time the car was stolen, when Ed Brewer came to the porch, knocked on the door, and asked for Edwards. Berry called Edwards, who then went away and did not return for two or three days. The stolen car carried an Illinois license tag. The only testimony connecting Brewer with the transaction is that of Berry, who said Brewer came after Edwards, and that of Edwards saying that Brewer was with Divine. It is plain, however, that it was sufficient to take the case to the jury. Perkins v. Commonwealth, 227 Ky. 129, 12 S. W. (2d) 297, and it is so conceded.

It is insisted, however, that the evidence for the defendant completely overturned that for the commonwealth, and rendered the verdict of the jury flagrantly against the evidence. Brewer testified that he went with Dorsey Farber to the party at Creel's home, and remained there until about 12:30 or 1:00 o'clock, when he and Farber left together and walked to Drakesboro, where they lived, a distance of four and one-half miles from Cleaton. Brewer testified further that he did not know Edwards, and had never seen him until he appeared as a witness in the present prosecution. He knew Cleve Berry, but did not at any time go to his house or call there for Edwards. He saw Oscar Divine at the same party, but Divine left before Brewer and Farber did. He did not see Divine after the party, was not with him at all, had nothing whatever to do with taking the automobile, and knew nothing about it. Brewer said he retired when he got home. Bruen Tanner testified that he was at the same party and saw Oscar Divine and Ed Brewer there. Divine left first, and Brewer and Farber left together near midnight. Tanner stated that he saw the Ford coupe parked in front of Creel's house about 1:30 a, m., as he left the party. Dorsey Farber fully corroborated Brewer's testimony. He testified to seeing Brewer at home in Drakesboro early the next morning. Brewer's father testified that he was working at night for a coal company, and reached home at 2:30 o'clock in the morning. Ed Brewer was then in bed asleep. Eck Doss testified that he lived in Cleaton, and on the night of the Creel party his child was sick, and about 2:00 o'clock in the morning he went for the doctor. He met a man in a Ford coupe at a point about 100 or 150 yards from the home of Creel. In attempting to drive around a ditch where a culvert was torn out, the windshield was broken. Doss threw his light in the face of the driver and asked if he needed help. The driver responded that he did not, pulled his cap down over his face, and proceeded towards Central City. Doss did not know the man in the car, but knew it was not Ed Brewer or Oscar Divine.

Will Hogan testified that he lived a quarter of a mile from Cleaton on the Central City road. On the night the car was stolen he had been up at 1:00 o'clock and had gone back to sleep, when some one called him to buy gasoline. He got up, and put four gallons of gasoline in a Ford car bearing an Illinois license tag. He did not rec-

ognize the man who had the car, but knew it was neither Ed Brewer nor Oscar Divine. In rebuttal, Mr. O'Neil and Mr. Creasy testified that the gasoline tank on the stolen car was full, as it had been driven but a few miles after being filled.

It will thus be seen that the defendant made a very cogent defense. It does not appear whether Brewer can drive a car. It is shown that the car was probably taken from Cleaton by an individual who was not Divine or Brewer. Mr. Berry lived in Cleaton, and, but for his testimony that Brewer called for Edwards, it would be very difficult to believe that Brewer was guilty of stealing the car. The evidence, however, did not overthrow the case for the commonwealth. It contradicted it very thoroughly, but the credibility of witnesses is for the jury to determine, and we may not on conflicting evidence substitute our judgment for that of the jury. A verdict is not palpably against the evidence because a jury believes one or more witnesses rather than others. Criminal Code, sec. 281 (Amendment 1910); Brown v. Commonwealth, 226 Ky. 255, 10 S. W. (2d) 820; Perkins v. Commonwealth, 227 Ky. 130, 12 S. W. (2d) 297.

Yet the conviction of Brewer depends mainly, if not entirely, upon the testimony of Edwards. After the trial, Brewer learned from a fellow prisoner some important facts concerning Edwards. He then put in his motion for a new trial the ground of newly discovered evidence, and produced in support of it his own affidavit and the affidavit of three witnesses. Brewer had been in jail, and his affidavit discloses that he was not negligent in failing to discover the evidence before the trial. Brewer said he did not know he was accused or suspected of having anything to do with the stolen car until he was indicted, arrested on a bench warrant, and placed in jail. He was not acquainted with the prosecuting witness Edwards, had never seen him, did not know where he resided, and had no knowledge or means of ascertaining what he would testify on the trial. By pure accident he learned of the witnesses whose testimony was so vital to his defense. Harry C. Dukes made an affidavit that he lived in Christian county, Ky., and that Edwards, whom he did not then know, came to his house in a Ford car, stating that he had just come from Owensboro. Dukes gave Edwards his breakfast, Edwards offered him the spare wheel and tire, and inquired the way to Kirkmansville. Edwards said the car came from Illinois, and told

Dukes he had "hijacked" it from some boys. The car then had the five wire wheels, the broken windshield, and the locked door. W. W. Rager's affidavit stated that he lived in Todd county about a mile from Edwards, and on Saturday night, after the car was stolen, Toy Edwards came to his home driving a Ford car with wire wheels carrying one spare. Toy Edwards told affiant that he was running a taxi, that the Ford automobile was his, that he was broke, and offered to sell the spare wheel for $4. Rager bought it, and paid the money to Edwards. Earlier in the week Edwards had been over there, but Rager did not then see the car he was driving. Mrs. Huston Rager said that she saw Toy Edwards in Kirkmansville in Todd county with a Ford car with wire wheels, which he invited her to examine. Edwards tried to trade her the car, stating that, if he could get a "good piece of money," he would trade the car. He told her the car was his, and that he had bought it for $200. Edwards said further that he had come from Owensboro by Hopkinsville and then to Kirkmansville.

If the affidavits of these witnesses are true, Edwards was not the innocent agent of the thieves in taking care of the stolen car, and he did not testify truly at the trial. It would tend to show that Edwards was either the thief or in complicity with the thieves. According to his testimony at the trial, Edwards was an innocent victim of designing criminals, and had no guilty knowledge that the Ford coupe was stolen property. If the jury had known that he had claimed to be the owner of the car, that he had said he bought it for $200, that he had said he "hijacked" it from other criminals, that he had sold the spare wheel, and had testified falsely in many particulars, it might have rejected the story of Edwards. The newly discovered testimony may not show conclusively the innocence of Brewer, but Brewer's defense was so well supported a jury might reasonably believe him in preference to Edwards, if Edwards was trying to shield himself from the consequences of the crime by fastening it upon another. On the other hand, if it be assumed that Brewer and Divine were guilty, and that Edwards was an accomplice with them in stealing the car, the newly discovered evidence is equally important, for in such event the jury could not convict Brewer on the uncorroborated testimony of the accomplice. Criminal Code, secs. 241, 242. When newly discovered evidence is such that

its effect would likely be decisive on the issues, an opportunity to present it should be afforded. Keser v. Commonwealth, 195 Ky. 809, 243 S. W. 1020; Overton v. Commonwealth, 202 Ky. 35, 258 S. W. 941; Roberts v. Commonwealth, 212 Ky. 791, 280 S. W. 111.

In view of the decisive nature of the testimony, under the peculiar circumstances existing, the court has concluded that a new trial should be granted appellant on the ground of newly discovered evidence.

Judgment reversed.