## Allen v. Commonwealth.

(Decided November 12, 1929.)

L. D. GREENE and S. L. GREENBAUM for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant Robert Allen, was indicted for murder and convicted of manslaughter and his punishment fixed at 21 years in the penitentiary. He killed George Doyle. The facts are brief. Appellant and Marie Davis lived together. She left him and went to the home of her mother at the corner of Twentieth and Walnut streets in the city of Louisville. Doyle had a trucking business with headquarters at the same corner. His place fronted on Twentieth, and the place of the mother of Marie Davis fronted on Walnut, with the result that the back yard was common to both places.

About 4 o'clock in the afternoon after Marie left appellant he went to the home of her mother and found her sitting by a window which he approached. There were words between them, and he attempted to strike her through the window. Not succeeding in this he climbed into the room through the window, laid violent hands on her, according to her testimony and that of another witness who was present, and also obtained the possession of a case knife and attempted to cut her with it. She screamed: George Doyle and those employed by him heard her, and they came out of his place of business into the back yard which brought them to the window of the room inside of which the melee was in progress. Words were passed, and appellant accused Marie Davis of having left him for Doyle. Doyle said to appellant that he had understood that he was making such statements and assured him that they were untrue. They became angered in the discussion, whereupon Doyle suggested that they fight it out with their fists. Appellant stated that he did not fight any man with his fists, but that he would go home and get his pistol and return later and fight it out with him. Before leaving he told the Davis woman that she had only two hours to live.

After he left he went to the place of a dealer and purchased a pistol at about the hour of 6 o'clock. No more was seen of him until about 9:30. Prior to that time Doyle and Marie Davis had visited the city hall and police headquarters in an effort to obtain a peace warrant for appellant, but it was Saturday afternoon and they were unable to find a magistrate to issue the necessary papers.

When darkness came on Marie Davis seated herself in the kitchen in her mother's home without lights. Her mother was absent, and she was alone. George Doyle

knocked on the kitchen door and was admitted. Both of them were uneasy and expectant of the appearance of appellant. At about 9:30 Marie saw him approach on the street. He stopped behind a telegraph post and appeared to be looking into the house where she was. She called the attention of Doyle to him, and Doyle expressed the belief that it would be best for him to ascertain what he wanted. Appellant had a pistol in his hand and Doyle was also armed. Doyle left the house, went into the street, approached Allen and asked him whom he sought. According to the evidence of the witnesses for the commonwealth, Allen responded with a series of shots from his pistol and Doyle fell on the street. After he fell he raised his body partly from the ground and fired two shots at Allen, one of them wounding him. Appellant left the scene in an automobile which he soon thereafter wrecked, and the police took charge of him and sent him to a hospital. Doyle was taken up from the street and taken to the same hospital. There they were placed side by side in the same ward in beds adjacent to each other. One of the policemen who carried appellant to the hospital and who saw him while he was there testified that appellant said that, if he died, he did not desire that Doyle should be prosecuted, and took the blame for firing the first shot. Doyle soon died.

Briefly stated, a summary of the evidence for the commonwealth is contained in the foregoing statement. Appellant admitted that he went to the home of the mother of Marie Davis in the afternoon, and that the difficutly took place, although he denied that he obtained a knife or attempted to cut Marie, or that he made any threats. He admitted that Doyle proposed to fight him, but he refused to engage in a fight because he did not have any reason, or occasion, to fight Doyle. He admitted that he procured the pistol later in the afternoon, but offered as a reason for his obtaining it that he had lost a pistol which he had borrowed from the father of Marie Davis, and he desired to replace it. He tried to locate the man from whom he had borrowed it, but failed to find him, and he carried the pistol along with him on his peaceful mission of returning to the house where Marie was to persuade her to return to his domicile. He discovered that there were no lights in the house, and he thought that she had hidden out because he had told her, according to his testimony, that he would return to see her that night. Doyle called to him from the kitchen

window asking him if he desired to see him, and, immediately, came out of the house onto the street advancing towards him and fired two shots at him. He then began to fire at Doyle. He denied that he stated to the policeman that he fired the first shot, and testified that Doyle told him while they were in the hospital, in the presence of the policeman, that he did not want appellant prosecuted because he (Doyle) fired the first shot. The policeman did not hear any such statement made by Doyle.

The witnesses for the commonwealth made out a rather strong case of murder, but there was the fact that Doyle left the house and approached appellant, and, taking this into consideration, the jury reduced the offense to manslaughter. The verdict appears to have been about what the evidence justified, and certainly there is no ground for complaint that the verdict is not supported by the evidence.

Complaint is made about the admission and rejection of evidence, but we can find nothing under that head that affords any basis for a reversal of the case. Incompetent evidence was admitted without any objection, but it was immaterial and consisted largely of statements made by parties in the narration of facts when appellant was not present. So far as we have been able to ascertain from the record, there is only one instance where the court ruled against appellant in the admission of evidence followed by an avowal. Two witnesses were placed on the witness stand by the appellant. Their testimony was not particularly helpful to appellant. At the conclusion of their examination, counsel for appellant asked each of these witnesses if he was not subpoenaed by the commonwealth. The court held that the question was incompetent. There was an avowal that the witnesses would have answered in the affirmative. It would require rather an extended stretch of the imagination to find error in this. Whether a witness is subpoenaed by one side or the other ought not to have anything to do with his testimony. The fact that the witnesses were brought there by the commonwealth and not used, and were thereafter used by the appellant, would not justify the introduction of the evidence that they were subpoenaed by the commonwealth, although the matter is wholly immaterial one way or the other.

There is one other bit of evidence ruled out which causes complaint on the part of counsel for appellant.

He was asked, while testifying, if he had not been convicted of a felony. He answered in the affirmative. His counsel attempted to show that he was confined in the penitentiary at Eddyville when Tex Walters attempted to escape from the prison, which resulted in tragic consequences. An objection was sustained and properly so. But aside from that there is no avowal as to what the witness would have answered. It has always been the rule that this court cannot act upon the competency of the answer which a witness would have made to a question unless there is an avowal as to what that answer would have been. In the recent case of Gillispie v. Com., 212 Ky. 472, 279 S. W. 671, the principle was again clearly and concisely stated.

The only further ground relied on for a reversal is that of newly discovered evidence, which it is claimed was sufficient to require the granting of a new trial. In support of his motion for a new trial he filed his affidavit to the effect that he had been confined in the Jefferson county jail without bond, and for that reason he had been unable to properly prepare his case; that he did not know, prior to the trial, that a woman, Mary Conway, and a girl named Lilly saw the shooting. He also filed in support of his motion the affidavit of Eliza Barker, which related substantially the same facts as testified to by two witnesses introduced by him. He also filed the affidavit of Maggie Conway, Edward Jeffries, and Pearl Clark which tend, in a way, to corroborate his defense. He did not mention the names of all of the witnesses whose affidavits he filed, in his own affidavit. In his motion for a new trial one of his grounds was that since the trial of his case he had discovered important evidence in his favor that he could not, by reasonable diligence, have discovered before the trial. He does not mention what the evidence was, but he filed at least three of the affidavits with his motion which should be treated as a part of it because they were referred to therein. The affiant, Maggie Conway, stated that she saw George Doyle cross the street and approach appellant, and that there was some conversation between them which she did not understand. She heard two shots fired and then, following a short pause, many shots were fired in rapid succession, and immediately thereafter she saw Doyle down on the street; that the first two shots fired were not as loud as the last shots that were fired. Edward Jeffries stated that he heard two shots, then a pause, with

several shots following, and that he looked out and saw Doyle on the ground. He also stated that the two first shots were not so loud as the last shots. The affidavit of Pearl Clark is to the same effect as that of Jeffries.

A counter affidavit was filed by Ophelia Doyle, the widow of the man who was slain. That affidavit discloses that the killing took place on the 23d day of June, 1928, and that appellant was indicted on October 2, 1928, and arraigned on the next day; that bail was refused him on October 4th; that appellant was not in jail from the date he left the hospital until he was indicted; that she had seen appellant talking to Eliza Barker before he was indicted; and that she had seen him in the neighborhood and on the street near the place where Edward Jeffries and Pearl Clark resided; that all of the witnesses lived within 100 yards of where appellant resided.

The evidence of these affiants was important in the defense of appellant, but if it was true that he resided in the neighborhood where they resided, and that he had an opportunity to come in contact with them, and that he had actually talked to at least one of them, it is difficult to see that he had used a proper degree of diligence in seeking to ascertain what facts might be proven by them. He was well aware that he had the big pistol and that Doyle had the small pistol at the time of the combat, if there was a combat. He must have known that those residing in the immediate neighborhood could have heard the shots and could have distinguished those fired from the small pistol from those fired from the large pistol. He does not state, in his affidavit, that he had been confined in jail, or elsewhere, from the date of the killing until the time of his indictment. The record discloses that he was denied bail when he was arraigned.

Counsel for appellant cite and rely on several cases where this court has held that a new trial should be granted because of newly discovered evidence. They cite Jones v. Com., 230 Ky. 24, 18 S. W. (2d) 287. That case clearly and accurately states the rules governing the granting of a new trial on the ground of newly discovered evidence, and cites the cases touching upon the point. It holds, in effect, that the granting of a new trial on this ground is not looked upon by the courts with favor, and that they are reluctant to reverse a judgment of conviction upon that ground alone because it gives ready opportunity for perjury or the perpetration of fraud by the party relying on it. As it was there pointed out the

courts will grant a new trial for newly disvovered evidence when on account of its materiality and probable effect a manifest injustice would have resulted in disallowing it. The pronouncements in that opinion are sound and safe, and should be followed. The authorities therein cited render it unnecessary to cite further authorities on the same point here. It has always been the rule of this court that a party may not secure a new trial on the ground of newly discovered evidence unless he shows a reasonable degree of diligence to discover the evidence prior to, or at the time of, his trial. The courts have been so careful about sustaining such a ground for a new trial that they have held, as in Idle v. Com., 148 Ky. 618, 147 S. W. 381, that newly discovered evidence must be mentioned in the motion and grounds for a new trial. The motion must point out the nature of the evidence as well as the names of the witness, or witnesses, that would give it. Under this rule it appears that the affidavit of Pearl Clark and Edward Jefferies may be eliminated from consideration. The motion and grounds for a new trial referred only to the affidavits which were filed with it, and neither the affidavit of Pearl Clark nor Edward Jefferies was filed at the time.

But going back to the question of diligence. In the case of Duckwall v. Com., 204 Ky. 442, 264 S. W. 1062, and the case of Mullins v. Com., 185 Ky. 326, 215 S. W. 56, we find the principle correctly stated that to justify the granting of a new trial on the ground of newly discovered evidence it must be made to affirmatively appear from the affidavit that the accused used reasonable diligence to obtain the evidence at the time of the trial. It is not sufficient, so it is held, for him to merely state that such diligence was exercised, but he must go further and state facts from which the court may determine whether such diligence was exercised. The appellant, in his affidavit, stated no more than that since his arrest on the charge of murder he had been confined in the Jefferson county jail without bond, and that he did not know at the time of the trial that Mary Conway and the girl named Lilly saw the shooting. The affidavit did not state facts which would enable the court to determine whether he had been diligent. He does not undertake to say when he was arrested on the charge of murder. His affidavit amounts to no more than the statement that he had been in jail since he was arrested, and that he did not know about these two witnesses.

Under the authority in the case of Jones v. Com., supra, and the cases therein cited, and the other cases we have referred to, we have reached the conclusion that the trial judge did not abuse his discretion in refusing to grant a motion for a new trial.

Judgment affirmed.