# Jeffords et al. v. Commonwealth.

Feb. 2, 1940.

Roy G. Garrison and A. Y. Martin for appellants.

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellants, David Jeffords and Myrtle Billington, together with Dorothy Fippin, were indicted and tried for armed robbery and convicted of grand larceny, an included crime. Jeffords and Billington were sentenced to five years in the penitentiary and Fippin was placed on probation. On this appeal grounds for reversal of the judgment assigned are 1) that the court failed to instruct on the whole law of the case, 2) that the evidence as to the amount of money stolen was insufficient to sustain a conviction of grand larceny and 3) that the court erred in failing to grant a new trial on the ground of newly discovered evidence.

O. B. Gray and J. S. Mosley, truck drivers, had brought a truckload of produce from Florida to Paducah and after unloading the truck embarked on a course of relaxation and celebration. They hied themselves to the Red Fox where the party began with the consumption of a few beers and a controversial amount of liquor. They were shortly joined by Myrtle and Dorothy who were possessed of a desire to help them celebrate. In the

course of the proceedings it became necessary, of course, to visit the Busy Bee and other establishments possessing entertainment facilities. For this purpose a taxi cab was called. Jeffords was the driver of the taxi. They proceeded to make the rounds, during the course of which the gentlemen from Florida got a little high and had numerous fights, or semi-fights, with each other. It was finally decided that the best thing to do was to drive out of the city and fight it out to ascertain which was the better man. The appellants claim that while on the way out of the city for this purpose Mosley did considerable kicking of the other occupants in the cab and finally kicked out a glass, whereupon Jeffords stopped the cab to put them out. In any event the cab was stopped and all got out. Jeffords ran to a filling station a short piece away and came back with a hammer. A fight ensued in which he knocked both of the Florida gentlemen down with the hammer. Mosley's skull was fractured so that a portion of it pressing on his brain had to be removed. Mosley states that he had approximately $80 in a bill fold at the time he was knocked down but shortly thereafter the bill fold was empty. Gray states that while he and Mosley were on the ground Jeffords told Myrtle to get his money, to get everything he had, and that she did get some money although he could not see the amount or what pocket she got it from. A woman across the street, who did not recognize the participants, states that she heard a woman say at the time of the difficulty ''I am going to get every G—— D—— thing he has got.'' In some manner Mosley shortly got to the filling station and was there taken in charge by a doctor who conveyed him to the hospital. He states that at that time all the money was gone from his bill fold. The doctor stated that he inquired of Mosley if he had any money and ascertained that he did not have any.

The appellants' version is that after the fight, and while Mosley was on the ground, Jeffords asked Mosley for $4 owing for taxi fare and that Mosley told him to get it out of his pocket; that Jeffords, not desiring to touch Mosley, told Myrtle to do so, whereupon she leaned down and picked up $4 in a roll lying on the ground by Mosley and that this was all the money taken from him. Immediately after the difficulty Jeffords and the two girls departed for Cairo and spent the night but came back the next day and Jeffords surrendered.

In support of the first ground urged for reversal appellants contend that the trial court should have instructed on petit larceny and should have instructed the jury that any one or more of the defendants might be either convicted or acquitted. On turning to the record we find that instruction No. 8 given by the court was a petit larceny instruction and that by instruction No. 10 the court told the jury that any one or more of the defendants might be either acquitted or convicted. We are at a loss to understand the raising of these questions in the brief in these circumstances.

There is equally little merit in the second ground urged for reversal, namely that the evidence was insufficient to show that more than $20 was taken by appellants. Mosley testified that immediately before he was hit he had approximately $80 in his bill fold and that it was empty shortly after he got up off the ground. This was ample evidence for the jury to conclude that more than $20 was taken from him.

The newly discovered evidence presented on the motion for a new trial consisted of the affidavits of three witnesses. The doctor who took Mosley to the hospital made affidavit that he was mistaken in his testimony on the trial as to Mosley having no money at the time he took him in charge. He states that he had examined his books and found that Mosley paid him $3 at that time; that he now remembered this to be a fact and that Mosley took the $3 out of a roll of bills in his pocket. Affidavits of two other witnesses, a man and his wife, stated that when the doctor took Mosley in charge they saw Mosley pay the doctor the $3 which he took from a roll of bills in his pocket. The failure of these witnesses to testify on the trial is accounted for in a plausible manner and we have little doubt as to the truth of the matter set up in their affidavits. We do not think, however, that such newly discovered evidence was sufficient to require the granting of a new trial since it appears that it is merely contradictory of Mosley's testimony and is not that character of testimony likely to exert a decisive influence of another trial of the case. Mosley testified that when the party started he had four $20.00 bills in his bill fold; that he took out one of these and changed it. In doing this it is not unlikely that he left a part of the money loose in one of his pockets. His testimony is most positive that he had at least the larger part of $80 in his bill fold and that this money was taken from him.

Though it be conceded to be a fact that he did have some money in the pocket from which he took the $3 to pay the doctor, we feel that this fact would have but little, if any, influence with the jury on another trial.

A new trial will not be granted on account of newly discovered evidence that is immaterial, cumulative, impeaching or incapable of exerting a decisive influence in the decision of the case. To justify the granting of a new trial, newly discovered evidence must be of such controlling character that it would probably change the verdict. Brewer v. Commonwealth, 228 Ky. 128, 14 S. W. (2d) 375; Hendrickson v. Commonwealth, 235 Ky. 462, 31 S. W. (2d) 712; Roberts, Bevins and McCoy v. Commonwealth, 212 Ky. 791, 280 S. W. 111; Daniels v. Commonwealth, 194 Ky. 513, 240 S. W. 67. The newly discovered evidence relied on here tends only to contradict Mosley's testimony in a relatively unimportant particular, and the trial court did not abuse its discretion in denying a new trial on this ground.

Judgment affirmed.