The motion for an appeal is denied and the judgment is affirmed.

**Ora Lee CARR, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1956.

Elmer Drake (Deceased), Raymond C. Cravens, Lexington, for appellant.

Jo M. Ferguson, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

HOGG, Judge.

Ora Lee Carr appeals from a judgment wherein he was convicted of the crime of maliciously cutting and wounding Leonard Alexander, with intent to kill, and sentenced to the penitentiary for a term of ten years. He contends that the court below erred in refusing to grant him a new trial upon the ground of newly discovered evidence.

A summary of the essential evidence adduced at the trial is necessary in order to properly consider appellant's contention that he should have had a new trial. Only two eyewitnesses testified—Alexander and the appellant.

Alexander testified that about midnight on August 16, 1955, while on his way home from Paris, he stopped at the Joyful Inn in Fayette County and spent about 20 minutes there drinking one beer and talking; that the one beer he partook of was the only one he had imbibed that night, and the only alcohol he had imbibed; that, having finished his beer, he left the Inn to go to his truck and then home; as he walked to his truck, a young man (appellant) whom he had never seen before, approached him from the rear of the building; without a word being spoken appellant walked up to him while

he was standing by his truck and cut and stabbed him with a knife in the neck and chest. He could offer no explanation for this unprovoked attack, except appellant appeared to be drinking. His wounds were such that he had to go to the hospital where he was required to remain five days.

Appellant testified that he had been in the Inn practically all night and at the time was pretty well "loaded." He was in the act of leaving to go to Mr. Harp's home across from the Inn, 75 or 80 feet away, where he stayed, when a man (Alexander) sitting in his truck called him a "S. O. B." and told him he did not like his looks; he got out of a truck and walked toward him as he stood at the rear of the Inn. It was dark and he could not see. Appellant admittedly cut him, although he could not see anything in either hand of Alexander, and could not see whether Alexander made any attempt to strike him. In his own words, "I was scared of him and I didn't know what he had and I was pretty well loaded. He was liable to have a tire tool, or knife, or anything, coming at me."

The alleged newly discovered evidence consisted of the affidavit of Andrew Harp, who, it appears, lived in the immediate vicinity of the scene of the cutting. In fact, from the affidavit of Harp it appears he was an eyewitness, of a sort, and was sitting at the window of his bedroom in his residence located about 80 feet from the place where the altercation occurred; he saw Alexander come out the front door of the Joyful Inn, get in his truck and drive around the side of the Inn where he stopped, got out of the truck, walked at a fast pace in a "belligerent manner" toward appellant, who was standing at the rear entrance of the Inn; words were exchanged between the two men which he did not understand; a struggle ensued between them and appellant struck Alexander with the knife.

It seems reasonably certain from the record that the deposing Andrew Harp is the same Harp referred to in the evidence of the appellant as the person with whom appellant was residing at the time of the altercation.

In his own affidavit in support of his motion for a new trial because of the discovery of new evidence, appellant deposed that approximately two days after the event he diligently inquired of persons on five different occasions at the Joyful Inn, undertaking to find a person or persons who saw the event and who would testify concerning the matter on which he was convicted, but could find no one; that since the trial he had learned of the witness, Andrew Harp; that knowledge of such eyewitness did not come to him until after the trial; he had no means of discovering or knowing of such witness before the trial, and did not lack in diligence therein. His affidavit, in this respect, does not indicate to us a sufficient compliance with the rule as to the degree of diligence required in such a state of case. He does not claim any effort on his part to discover before the trial the evidence of Andrew Harp, with whom he apparently lived, and who certainly lived in the immediate vicinity, 75 or 80 feet from the scene. It seems to us in the first place that his showing as to diligence is insufficient. He fails to make a convincing manifestation that he was deprived of the evidence through no fault or dereliction of his own. Belcher v. Commonwealth, 247 Ky. 831, 57 S.W.2d 988; Allen v. Commonwealth, 231 Ky. 463, 21 S.W.2d 800.

Moreover, the alleged newly discovered evidence, at best, is merely cumulative. It is a well recognized rule that if the newly discovered evidence is merely corroborative and cumulative it will not warrant a new trial, especially so if it is not of such controlling quality and decisive nature that it would likely change the verdict. In the light of this rule we hold it was merely corroborative—at the most cumulative. It was not controlling because even though it were true, yet the evidence itself did not conduce to show that the defendant acted in self defense. We are not at all satisfied that if this evidence had been heard, along with

the evidence heard by the jury, the jury would have found a different verdict. Roberts v. Commonwealth, 212 Ky. 791, 280 S.W. 111; Harrod v. Commonwealth, 311 Ky. 810, 226 S.W.2d 4; Ely v. Commonwealth, 239 Ky. 638, 40 S.W.2d 276.

Wherefore, the judgment is affirmed.