## Parks v. Commonwealth.

(Decided November 15, 1911.)

### Appeal from Madison Circuit Court.

1. Evidence—Sufficiency of.—Where one person attacked another, and there was a conflict in the testimony as to whether the person attacked, stabbed and killed the other during the fight, or subsequently stabbed him after the fight was over, there was sufficient evidence to sustain a verdict finding the accused guilty of murder.

2. Newly Discovered Evidence.—A new trial will not be granted upon the ground of newly discovered evidence, where the new evidence is accumulative merely, and the accused fails to show that he has exercised diligence for the purpose of obtaining said evidence upon the original trial.

3. Trial—Continuance.—An accused will not be heard to say that he was forced into a trial, when he was represented by competent and able counsel, and no motion was made for a postponement of the trial.

SMITH & SMITH for appellant.

JAMES BREATHITT, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, William Parks, is a colored boy 15 years old. On the morning of October 3, 1911, he had a difficulty with Sherer Riddle, a white boy 18 years of age, which resulted in Parks stabbing Riddle over the heart and cutting him across the bowels, causing his death. Parks was indicted for murder on October 4, and his trial on October 16 resulted in a verdict finding him guilty of murder and a judgment confining him in the penitentiary for the period of his life. Parks appeals and assigns three grounds for a reversal; (1), that the

verdict is not sustained by the evidence; (2), that since the motion for a new trial was overruled he has discovered new evidence material to his defense; and (3), the alleged prejudice against the appellant, connected with the fact that he was put upon his trial within about two weeks after the offense was committed, and within ten days after the indictment was returned.

1.   The evidence shows that about nine o'clock on the morning of October 3rd, Parks, who was a delivery boy for a confectioner in Richmond, was on his way to the stable when he met Riddle in front of Hurst's store. Parks says that Riddle grabbed him by the collar, cursed him and asked him why he did not go and get the horse; and, that in answer, he told Riddle to go on and let him alone—that he would get the horse when he got ready. Parks had a knife in his hand with which he had been peeling a potato, and he says that while Riddle had hold of him by the collar, he put the knife in his pocket. They became separated, Riddle going over against the telephone pole on the edge of the pavement, and Parks against the side of the house. At this point only is there conflict in the testimony. Parks testified that Riddle attacked him a second time, and had grabbed him by the collar, when he drew his knife and cut Riddle as above indicated. The witnesses for the Commonwealth say there was no second attack by Riddle, but that when the boys had become separated after the first scuffle, and Parks had gone against the wall of the house, he rushed at Riddle and cut him while he was standing near the telephone pole; whereupon, Riddle ran toward his home and stopped in a blacksmith shop, Parks following him. There is some evidence to the effect that Parks looked into the blacksmith shop and then went on out the street. Parks says that immediately after the cutting he started to run toward his home, and in doing so went out Collins street in the same direction Riddle had gone, but that he was not pursuing him, and did not look into the blacksmith shop as he passed. These two theories of the case were fully and fairly submitted to the jury, and it is not our province to disturb its finding. There was ample evidence to sustain the verdict upon the theory of the Commonwealth, that Parks maliciously attacked and killed Riddle after the difficulty was over.

2.   The newly discovered evidence is found in the affidavit of James N. Carnes, who states that he was driving along Main street when he saw Riddle holding Parks

by the collar, when Parks drew his knife lightly over the arm of Riddle, but not hard enough to cut him; that they became separated; and, that Parks did not run at Riddle and stab him while he was standing at the telephone pole. He further says that Parks put his knife in his pocket while Riddle was holding the defendant by the collar.

This testimony, at best, is merely corroborative of other testimony in the case. Evidently the use of the knife which Carnes saw was not the occasion of the stabbing which led to Riddle's death. Carnes' evidence merely supports other evidence which tended to support Park's theory of the difficulty. Moreover, there is no showing of diligence upon the part of Park in obtaining the evidence of Carnes at the trial; indeed, there is no showing of any kind by Parks that he did not know of Carnes' evidence at the time of the trial. Carnes merely states that he was with James N. Warren at the time, and that he had not been summoned to appear at the trial. There is nothing whatever to show what Warren knew of the case; and he was riding with Carnes. Presumably they had equal opportunity of seeing what happened. Considering that fact, and the improbability of Carnes' ability to carefully judge of the merits of the difficulty by reason of his position and motion, his testimony could be of little value, and, at most, corroborative only.

3. The third ground for a reversal is, that the appellant was prejudiced by being forced into an early trial as above shown. Appellant was represented by competent and able counsel, and there was no motion made for a postponement of the trial. This point, therefore, needs no further consideration. The grand jury was in regular session when the killing occurred, and it properly returned the indictment without waiting until the next term of the court. There is nothing whatever in the evidence to sustain appellant's claim that there was any prejudice against the defendant, or that he was prejudiced by reason of his early trial. If the appellant had desired a postponement of his trial, he should have asked it, giving the grounds for his request; and, if he had presented sufficient grounds, there is no doubt the court would have sustained his motion. He cannot, however, be permitted to willingly go to trial, and then complain that the court did not postpone his trial upon the court's own motion.

Although no objections have been taken to the in-

structions, either in the motion for a new trial or in the brief for appellant, it is proper to say that they fully and fairly presented every phase of the case to the consideration of the jury, and gave the appellant the benefit of every protection which the law throws around him.

Judgment affirmed.