## Miller v. Commonwealth.

(Decided April 29, 1930.)

136

G. DUNCAN MILLIKEN for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Vernon Miller was convicted of the crime of manslaughter and condemned to serve ten years in the state penitentiary. He seeks a reversal of the judgment of conviction upon the grounds that the trial court erred in excluding testimony offered by him and in instructing the jury.

Vernon Miller and his son, Mason Miller, were employed at a stone quarry in charge of Virgil Miller, who was appellant's brother. The workmen had been employed twelve hours each day, but an extra crew was put on and the working time was reduced to nine hours each day. The reduction in the working time of the men created a controversy which resulted in an altercation in which Virgil Miller was killed. It was for the killing of his brother that Vernon Miller was convicted. The question addressed to appellant, and to which the court sustained an objection, was designed to elicit his belief as to the apparent necessity of striking his brother to prevent great or fatal injury to his son. The appellant had testified to the effect that he saw his brother draw a pickhandle as though intending to strike Mason Miller, but that he remembered nothing else that occurred until Virgil Miller was falling, when he vainly grabbed at him. He was then asked if Virgil Miller was in striking distance of Mason Miller at the time, and answered that he was. Counsel for the commonwealth objected to a question whether he "thought the boy was in danger of his life at that time," and the objection was sustained. The judge erroneously stated that the belief of a man under such circumstances is not competent evidence, but the error

of the court is not available to appellant for at least two reasons. In the first place no avowal appears to show what answer the witness would have made. The rule of appellate practice in such situation is that a reviewable ruling is not presented. Highbarger v. Com., 225 Ky. 802, 10 S. W. (2d) 286; Westchester Fire Ins. Co. v. Crume, 223 Ky. 707, 4 S. W. (2d) 716; Fremd v. Gividen, 233 Ky. 38, 24 S. W. (2d) 915; May v. Com., 153 Ky. 141, 154 S. W. 1074. In the next place the knowledge of the witness upon the subject was exhausted. He told all he knew about it, and was permitted to state that when he saw his brother raise the stick over his son and started to strike, his mind went blank because he "knew his son was dead," obviously meaning that he thought the impending blow would kill his son. When the facts are fully developed, there is no room for complaint that a particular question was left unanswered. Greer v. Farrar, 223 Ky. 564, 4 S. W. (2d) 367.

The criticism of the instructions is two-fold. The first point is that the instruction on self-defense should have omitted the qualification which took away appellant's right to defend his son, if the son was the aggressor. The authorities are not in accord with the contention. We have uniformly held that an accused, who assumes to defend another, takes his chances on the merits of the controversy into which he interposes, and, if the one whom he seeks to protect was not justified under the circumstances in taking life in his own defense, another could not do so for him and obtain any greater right. McIntire v. Com., 191 Ky. 299, 230 S. W. 41; Norton v. Com., 196 Ky. 90, 244 S. W. 310; McHargue v. Com., 231 Ky. 82, 21 S. W. (2d) 115. There was evidence tending to show that Mason Miller first assaulted Virgil Miller with a deadly weapon which provoked Virgil Miller to strike at Mason Miller. Such being the fact, when Vernon Miller struck Virgil Miller to protect Mason, his right to do so depended upon the existence of a like right in Mason Miller, and, if the latter brought on the difficulty, his right of self-defense did not exist. This was true even though Vernon Miller did not see Mason Miller assault Virgil Miller, but observed only the danger of his son. McHargue v. Com., supra. It is apparent, therefore, that no error was committed in this instance

138

in qualifying the instruction on the right of appellant to defend his son.

The other complaint is addressed to an instruction defining what constituted a deadly weapon. It is not contended that the instruction was incorrect in form or substance, but that such an instruction was inappropriate. It is said also that the definition should have embraced the pickhandle which was in the hands of Virgil Miller at the time. The weapon used by appellant had proven to be a deadly one, and we see no room for complaint of an instruction defining the character of weapon embraced by a term used in the other instructions. Cf. Brown v. Com., 226 Ky. 255, 10 S. W. (2d) 820. In prosecutions for striking and wounding with a deadly weapon with intent to kill, where the weapon used was an ordinary walking stick, it is for the jury to determine whether it was a deadly weapon, and it is necessary in such cases that a proper definition be given. Ward v. Com., 218 Ky. 217, 291 S. W. 47. The instrument employed in this case was a sledge-hammer weighing six pounds, and, according to the evidence of the commonwealth, was used by the appellant with great force crushing the skull of his brother. We see no merit in the contention that the jury could have been prejudiced by the definitions of deadly weapons embraced in the instruction, or by the omission to include the weapon that was in the hands of the deceased.

The judgment is affirmed.