## Dewberry v. Commonwealth.

(Decided December 18, 1931.)

C. EUBANK TUCKER for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal brings to us for review the indictment, trial, and conviction of Walter Dewberry of the charge of willful murder alleged to have been committed in Hardin county, Ky., by the shooting and killing of

◼◼◼◼◼◼◼◼◼◼◼◼ ◼◼◼◼◼◼

Thomas Tillery on the 8th of April, 1931. He was convicted by a verdict of the jury and his punishment fixed at death, and from the judgment sentencing him, he appeals.

Walter Dewberry, Charles Rogers, and Walter Holmes, alias Jack Strong (negroes), about April 6, 1931, left the city of Chicago, Ill., for Nashville, Tenn. They were armed with pistols and traveling in an automobile. They arrived in Elizabethtown, Hardin county, Ky., in the nighttime. On observing men trying to flag them to stop, and hearing shots which they construed as an effort to stop them, they turned their car into a short street. Coming to the end of it they turned the car with the intention of returning, when on observing another car coming into that street, and hearing another shot, they jumped out of their car and ran. They traveled four or five miles across the country through the fields. They came to a railroad track which they followed until they came to the home of Thomas Tillery. This appellant claims that while crossing a fence in making the trip, and before they came to Tillery's home, he sprained his ankle, and for that reason he was walking behind his two companions. He states that before reaching the home of Tillery, his two companions "passed a motion" to rob Tillery of his automobile. When they reached Tillery's home, his two companions went onto the porch of his residence, and he, the appellant, stopped at the edge of the porch. One of his companions knocked on the door, while he himself was resting on the porch. He got up and went toward them while they were stating to Tillery they wanted to borrow his automobile pump. He heard Mr. Tillery state that he had no pump. His companion stated to Tillery, "We will leave money for the pump." He saw one of his companions break and enter through the window, and the other one turned to go in. They began to fire pistols on the inside of the room. There were two shots fired inside the house and when he heard the shots he began to shoot his pistol, and continued to do so until he had no more cartridges in it. He claims that a white man came out of the home of Tillery and struck at him with a stick, and he grabbed him and they scuffled until he felt the arm of Tillery, or the man he was grappling with, give way, "the man was shot"; that he saw blood come through his shirt. He used this language: "I don't know whose pistol he was

shot from—I don't know whether it was my pistol that shot him, but it was not in my mind anyway to kill him. . . . The shot was fired but it was done unintentionally by my pistol, anyhow after that I got a chance to get away from him, I felt he was weakening and I left him to lay on the ground and when I got up to run off and leave him he was up on his feet again just like a jack-out-of-the-box. . . . I ran on down to the highway and saw this boy Charlie . . . and I said, 'I don't know whether I shot him or who shot him, . . . we better move on out of the way before we get caught.'" He claimed that on account of his sprained ankle he went to a field and remained all night. When he awoke next morning he heard voices calling, when a man came out of the field and asked him if he was in the killing.

Dewberry made a confession to the county attorney of Hardin county and, on another occasion, to a detective in Louisville. His confessions are more favorable to him than his testimony before the jury.

The appellant and his two companions arrived at the home of Mr. Tillery about 1 o'clock in the nighttime, on April 8, 1931. Tillery and his wife were occupying a bed in one room; a boarder was occupying a room directly over their bedroom, and his son-in-law and daughter were occupying a bedroom in a different part of the residence. There were double windows in the room occupied by Tillery and his wife. Mrs. Tillery, on hearing a knock at the door, got out of bed, looked through a window and saw a negro passing it; a knock was heard by her at the door opening onto the porch. Then her husband got out of bed and went to the window which opened onto the porch. On reaching the window, Tillery raised the shade when a negro addressed him, saying he wanted to get an "auto pump"; wanted to borrow it. Tillery stated to him that he did not know him, and did not want to let him have the pump. Then the negro proposed to leave money for it until he could bring it back. Her husband then told them that he would not go out and get it for them, and he refused to do so; then the window pane crashed, a shot fired, her husband screamed and groaned, when she leaped and crawled under the bed. She heard two voices inside the room saying "Stick 'em up, stick 'em up." She did not know when her husband went out of the house. There was no light in the room at the time the shooting was occurring. She could only see by the flash of the fire of the

pistols. After Tillery and the men left the room there was firing outside; the bullets went through the walls of the house; two of them striking the door facing over the bed. She aroused her daughter and son-in-law, and they listened on the porch where they heard and recognized her husband's voice, coming from the direction of the cattle guard on the railroad; he was calling for help. They got him to the house, found he was shot through the abdomen, the bullet passing through the body. A doctor was called and examined Tillery and advised that he be taken, and he was taken immediately, to the hospital, arriving there about 5 o'clock the next morning. He died at 12:10 p. m. There were other wounds and lacerations on Tillery, one on the scalp, one along the frontal region of the head, one along the hair line, superficial wounds on the left hand and the bottom of his feet. The gunshot entered directly under the rib, practically at the nipple line, and its exit was almost directly behind, just below the rib posterior. The gunshot wound produced his death.

The appellant, Dewberry, was arrested next morning in a field and immediately conveyed to, and confined in, jail. On April 20, 1931, a special term of court was held, a grand jury was impaneled and an indictment returned, charging the three negroes with the crime of willful murder committed by the shooting and killing of Tillery. The defendants were brought into court and the Honorables Haynes Carter and J. E. Wise, able and distinguished attorneys practicing at that bar, were appointed by the court to represent the appellant, Walter Dewberry. They accepted the appointment and undertook to, and did, represent him in the preparation of his defense of the crime charged, until the calling of the prosecution for trial on the day the trial began. After waiving formal arraignment and entering a plea of not guilty, the case was set over to April 28, 1931; the defendants were remanded to jail in Jefferson county. On the 28th day of April, the prosecution against Walter Dewberry was again called for trial and Carter and Wise again appeared as his counsel, when defendant informed the court that "he had employed counsel in the person of C. Eubank Tucker before he was indicted herein." Thereupon Carter and Wise asked permission of the court to withdraw as attorneys of appellant, and with the consent of the court they withdrew from the case, when C. Eubank Tucker assumed charge of appellant's

defense. The commonwealth announced ready for trial; the appellant moved for a severance, which was granted. The Commonwealth elected to try Walter Dewberry. By his counsel, C. Eubank Tucker, the appellant asked for a continuance. No written motion was offered to be, or was, filed, and no affidavit in support thereof was offered or filed. The court declined the request and proceeded with the trial.

The jurors, as they were called and sworn, were examined with unusual caution, attention, and care by the court himself. It is shown by the record that when any juror, while being examined by the court, or by counsel of the commonwealth or of the appellant, touching his qualifications, intimated slightly or otherwise that he had an opinion, or for any reason could not, or would not, give the appellant a fair and impartial trial, the court, on his own motion, excused such juror. The record is unusual in that it shows an extreme effort and a plain, positive desire on the part of the court and the attorneys representing the commonwealth to obtain for the trial of the appellant a fair and impartial jury. It is not even intimated by counsel of the appellant that the jury was not fairly and properly selected, or that it was unfair or influenced in any way. After hearing a portion of the evidence, court was adjourned for the noon hour; the attorney of appellant was passing to or from the courthouse, when some imprudent, thoughtless, though probably excited, person, engaged in a colloquy with the appellant's attorney, which resulted in an assault upon him. Slight injury was inflicted upon him by some person whose name is not shown by the record, which required treatment by a physician. After receiving medical attention, the attorney of appellant appeared in court and continued to participate in the trial. So far as the record shows, he presented the appellant's defense ably and well. So far as appears from the record, appellant's counsel did not make known to the court the fact he had been either assaulted or injured in any manner, or molested by any person whatsoever, until after the verdict of the jury. He made no suggestion to the court relating to himself or his alleged injury, but proceeded regularly in the conduct of the defense of his client. He asked for neither delay nor a continuance, not even for a recess. He conducted the defense and the trial proceeded regularly and formally

to a conclusion, notwithstanding counsel's alleged injury.

The record discloses that counsel of appellant, during the trial, objected to the admission of evidence offered by the commonwealth relating to a bullet that had been fired from a pistol, a .38 special. On his objection, the court advised the commonwealth that other evidence was necessary to show its competency before it was admissible. No objection was taken to the ruling of the court by the appellant. To so much of the appellant's two confessions as related to the commission of crimes committed by him and his companions between the city of Louisville, Ky., and Elizabethtown, Ky., while making the trip from the one city to the other, which was finished up at the home of Tillery at the time of the killing, the appellant objected to the same being admitted as evidence against him. The court sustained his objection. This evidence was competent and should have been admitted. The evidence of the crimes which the appellant and his companions committed while making the trip was competent, as it tended to establish their motive in going to the home of Tillery and robbing him of his car, in which they evidently intended to escape from the vicinity of their crimes, as well as to prevent a discovery of their identity. Sneed v. Com., 236 Ky. 838, 34 S. W. (2d) 724 and cases cited.

Without an elaborate detailed statement of the evidence, it is sufficient to say that the testimony of the appellant and of Mrs. Tillery establishes his guilt beyond a reasonable doubt.

In his own testimony before the jury, he confessed that the purpose of himself and his companions in crime was robbery at the time they went to the home of Tillery and engaged in shooting, both in and out of the house, which resulted in Tillery's death. While he claims that on account of his sprained ankle he was traveling behind his companions at the time they "passed a motion" to go to the home of Tillery, and, if necessary by force and violence, rob him of his car, he admits being on the porch and engaging in the shooting which brought about Tillery's death. Powers v. Com., 197 Ky. 154, 246 S. W. 436; Carsons v. Com., —— Ky. ——, 44 S. W. (2d) —— (decided Dec. 15, 1931). Under the proven facts and the law as laid down in the Powers case and the Carsons

case, the appellant and his associates by the killing of Tillery committed the crime of willful murder while engaged in committing the crime of robbery.

The appellant complains because the court refused to continue the case, when his employed counsel in his behalf merely requested it, although he admits that he failed to comply with the requirements of section 189, Criminal Code of Practice. It is a fair presumption that the two distinguished attorneys who had been looking after the preparation of his defense disclosed to appellant's employed counsel, when he came into the case, any facts within their knowledge relevant to the defense, and that if they or his employed counsel, had any grounds for continuance, knowing the provisions of section 189 of the Criminal Code of Practice, his employed counsel, upon their withdrawal, would have properly presented a motion for continuance, supported by an affidavit, as required by the Criminal Code. Counsel of appellant cites and relies upon Miller v. Com., 197 Ky. 703, 247 S. W. 956; McDaniel v. Com., 181 Ky. 766, 205 S. W. 915; Cass v. Com., 236 Ky. 462, 33 S. W. (2d) 332, in support of his contention that a continuance should have been granted to his client. In each of these cases the motion for continuance was supported by an affidavit. They are easily distinguished from the present case, in that in it no affidavit was made or offered to be filed or filed. If counsel was not prepared to enter into the trial for want of time to acquaint himself with the facts of the case, he should have made known that fact to the court in some manner other than merely making request of the court to continue without assigning any reason whatsoever therefor. The cases cited by appellant are sufficient authority for this view of the present case. The rulings of trial courts on the motions for a continuance have been before this court in hundreds of cases, and in no one of them will it be found where it was held that a continuance should have been granted when the motion was not supported by an affidavit. The contrary rule prevails in the absence of a showing by the record that a motion was made and the grounds therefor supported by an affidavit; the failure of the trial court to continue without such a showing will not be considered. Clark v. Com., 58 S. W. 429, 22 Ky. Law Rep. 517; Parks v. Com., 145 Ky. 364, 140 S. W. 544. Since justice must

be swift to be effective, and delays lessen both the chance and effect of convictions, it is the policy of the law to affect a speedy trial. Fuson v. Com., 199 Ky. 804, 251 S. W. 995. For this reason a delay or continuance should not be granted on a mere request without valid grounds therefor, supported by an affidavit. Parks v. Com., supra.

It is most earnestly and urgently insisted by appellant that the court should not have proceeded with the trial after his counsel was assulted during adjournment or recess of court. The record discloses that the assault was made upon him by some irresponsible, excited person; that soldiers were present to assist the county officials in maintaining order; that the soldiers were on the outside of the courthouse; that the sheriff and his deputies maintained order in the courthouse during court. There is no showing that the jury had any knowledge or information that counsel had even been assaulted. So far as it appears from the record, the court had no knowledge of the assault until appellant's counsel filed his affidavit disclosing it in support of the motion and grounds for a new trial.

Without any knowledge thereof, so far as the record shows, the court proceeded with the trial after the alleged assault, and counsel of appellant participated in the conduct of the trial, and ably and diligently presented the appellant's defense. The assault and his injury thereform were not made known to the court, as it appears from the record, until after the verdict of the jury, and then by an affidavit in support of his motion and grounds for a new trial. Counter affidavits of the commonwealth's attorney, and the county attorney, and the attorney employed to assist the commonwealth, were filed in resistance of the motion and grounds for a new trial. It appears from the affidavit of counsel of appellant, filed in support of the motion and grounds for a new trial, that during the recess of court "he was ruthlessly, brutally, and maliciously beaten by an angry mob as he was approaching the courthouse," and that

"without the interference of state troops undoubtedly would have been killed; that he was forced to receive medical treatment at the office of a physician where he was taken under a heavy guard of the local police and state troops, who were fol-

lowed by a howling mob. . . . That during the trial by reason of said physical and mental condition, and by reason of his recent experience with the mob, he was afraid to ask questions or to make open objections to the court because he feared an aggressiveness on his part would further endanger his life.''

These statements of counsel are inconsistent with his conduct of the trial as it is shown by the record. He was in the presence and under the immediate protection of the court and its officials. It would have been an easy matter for him privately to have informed the court of his predicament. No one who knows the court will doubt for one moment that if counsel had made known to him at the proper time in any manner his alleged condition and state of mind, the court would have afforded him not only protection and security against any threats or violence, but would have given him ample time and opportunity for him to have regained his composure so as to enable him to present the facts he disclosed in his affidavit after the verdict of the jury.

After his affidavit was made part of the record, the affidavits of three officials of the court, known to be of the highest character, were filed in rebuttal, wherein they say ''that they were each present in the courtroom when attorney for defendant, Walter Dewberry came to the courtroom during the progress of this trial, and after he had been treated by Dr. Taylor and the only wound appearing being one upon the forehead which appeared to be slight, and a swollen place on the right jaw, and at said time they asked the said C. Eubank Tucker, attorney of defendant, Walter Dewberry, if he felt like going ahead with the trial, and in response to which the said Tucker replied that he did . . . that they could not observe any difference in his voice, nor in his manner, nor in his demeanor that indicated any signs of intimidation or distress or fear different from his attitude before the occurrence mentioned in his affidavit.'' The trial judge made his statement a part of the record herein, which recites

''that the usual good order and decorum obtained in the courtroom . . . that he heard no threats of violence and saw no demonstration indicating any; that good order was maintained throughout

with little difficulty and without any attendant circumstances to influence the jury or to prejudice the rights of appellant; that the trial in its general aspects was not different from the average murder case where there is widespread interest.''

The further statement of the trial judge is to the effect that

"two of defendants were charged with serious crimes elsewhere and for this reason the jail was kept guarded at night by soldiers; that at no time were soldiers stationed in the courtroom, armed or unarmed, but that their duties were outside, mainly about the jail and special officers attended by the court.''

It should be conceded that this court would be going far afield, without law or precedent, to hold that the trial court erred in not continuing or delaying the case without even a request and on his motion, on account of the alleged assault upon the attorney of appellant. The trial court is not required to continue or delay a case except where he is of the opinion the ends of justice demand it. Vick v. Com., 202 Ky. 845, 261 S. W. 616. The failure of appellant's counsel to object after he received his alleged injury to proceeding with the trial constituted a waiver of the appellant's right to complain of the court's failure to continue or delay the trial until his counsel could recuperate or regain possession of his faculties necessary to engage properly in the trial. Elkins v. Com., 213 Ky. 202, 280 S. W. 970.

In Voells v. Com., 15 Ky. Law Rep. 574, a certain showing was made that defendant's attorney was not well enough to try the case; it was held that it was not sufficient to authorize a new trial. It is an established rule that an accused is bound by the acts or nonaction of his counsel in the conduct and management of his defense. Hughes v. Com., 80 S. W. 197, 25 Ky. Law Rep. 2153. The failure of his counsel to make known to the court the fact, if it were one, that he was unable for any reason properly to go on with trial must be regarded as a waiver of appellant's right to raise here an objection to the trial court proceeding after his counsel was assaulted and injured. Rose v. Com., 181 Ky. 337, 205 S. W. 326; Hall v. Com., 189 Ky. 72, 224 S. W. 492; Lewis

v. Com., 190 Ky. 160, 227 S. W. 149; Dennison v. Com., 198 Ky. 379, 248 S. W. 878; Overton v. Com., 202 Ky. 35, 258 S. W. 941; Roark v. Com., 221 Ky. 253, 298 S. W. 683.

The accused and his counsel may not go on with a trial, taking chances with the verdict, and, failing of success, ask a new trial on a ground that should have been presented by an objection during the progress of the trial. Wolff v. Com., 211 Ky. 62, 276 S. W. 1067. It was the duty of appellant and his counsel, although he may have been severely injured by the assault, to act promptly and to present his ground for delay to the court. Epling v. Com., 233 Ky. 407, 25 S. W. (2d) 1022. The appellant, in the affidavit of his counsel filed in support of his motion and grounds for a new trial, complains of the presence of the soldiery, but nowhere, either in the motion and grounds for a new trial or bill of exceptions, does appellant rely thereon as a ground for setting aside the verdict of the jury. No complaint is made therein of the presence of the soldiers, and where there is no affirmative showing that an accused's rights were substantially prejudiced thereby, or that their presence deprived him of a fair and impartial trial, the mere fact that the soldiers were in attendance furnishes no ground for a new trial or reversal. The refusal of the court to grant a continuance or the postponement of the trial because of the presence of soldiers, or on account of local sentiment or prejudice arising from a defendant's crime, will not be disturbed by this court unless it be made to appear affirmatively by other evidence than by the affidavit of the accused or an oral statement of his counsel that the court abused its discretion. Smith v. Com., 42 S. W. 1138, 19 Ky. Law Rep. 1073.

One of the purposes of a bill of exceptions is the presenting to this court questions for its consideration on an appeal. This court cannot reverse a judgment in a criminal case unless for an error of law occurring on the trial and appearing in the bill of exceptions as provided in the Code of Practice. Glass v. Com., 26 S. W. 811, 16 Ky. Law Rep. 108; Crouch v. Com., 238 Ky. 5, 36 S. W. (2d) 653; Turk v. Com., 239 Ky. 55, 38 S. W. (2d) 937; Puckett v. Com., 235 Ky. 340, 31 S. W. (2d) 383; Miller v. Com., 234 Ky. 135, 27 S. W. (2d) 683; Manns v. Com., 235 Ky. 325, 31 S. W. (2d) 390.

As we have stated, during the admission of the evidence heard by the jury, the appellant objected to two questions. No objection or demurrer was entered to the indictment. No objection was made to any instruction given by the court. The only grounds urged for reversal are failure of the court on appellant's request to continue the case, and the failure of the court, on his own motion, to delay or continue the trial of the case because of the alleged assault on his counsel by some unknown person.

A careful examination and close scrutiny of the record convince us that no error was committed by the trial court, and that the appellant received at the hands of a court and jury of his country a fair and impartial trial. His defense has been as well presented by his counsel as was permissible under the existing facts.

The Legislature in its wisdom has provided, and authorized, the infliction of punishment at death in a certain class of cases. Accepting the admissions of the appellant, when on the witness stand, no room is left to doubt that this is a case coming within that class. There is no doubt that the appellant and his companions in crime, actuated by a predetermination to rob him of his automobile to enable them to escape from the vicinity of their predatory crimes, not only atrociously, but fiendishly, murdered their overpowered, helpless victim. The mind of the human is scarcely able to conceive, and cannot comprehend, the brutality displayed by them in the taking of his life.

The law, through the instrumentality of a jury, has fixed the appellant's punishment for his part in this crime, or, another way of saying it, the law has provided its own instrumentality for the payment, here, of the appellant's wages for his own wicked sin, which, according to the verdict of the jury, is death. It is our duty to administer the law as it is written, and according to the facts shown by the record in each particular case. No reason is shown by the record authorizing or justifying our interruption of the jury's verdict. Wherefore, the judgment is affirmed.

Whole court sitting.