### Montjoy v. Commonwealth.
(Decided Dec. 20, 1935.)

427

WM. E. WEHRMAN and BERT J. KING for appellant.

BAILEY P. WOOTTON, Attorney General, RAY L. MURPHY, Assistant Attorney General, and ULIE J. HOWARD, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

John, alias Peter, Montjoy, was convicted of the offense of rape, sentenced to death, and appeals.

The alleged offense occurred around 8:30 p. m., March 22, 1935. The prosecutrix, whose husband was a railway mail clerk, working between Cincinnati and Pittsburgh, had taken him in their car to make his customary run. She let him out of the car at the Covington end of the bridge, from which point he took a. bus or street car across the river. She returned home, and after changing her clothing, drove back to the Ken-

tucky Grill, located at 809 Madison street in Covington, with the intention of spending a part of the evening. Arriving near there she turned into a parking lot along which ran an alley. Locating a suitable parking space she turned off her lights, placed the car key in her purse, and just as she closed the car door turned and was faced by two colored men, one being the appellant and the other William Black, as it later developed. Appellant placed a pistol against her side and said, "Hand over your purse and don't make a scream and get in the back of the car and lie down on the floor. If you don't I will shoot you." Appellant demanded the car key and she told him she had thrown it on the ground. At this point, as it is shown by the proof, Black went down the alley, and when he got to the end, ran away. Search was made for the key, but it was not found, as prosecutrix had placed it in her purse. It was then that appellant with the pistol still against prosecutrix, told her to "get down the alley," and forced her some distance down the same. He had already obtained her purse, and when he had forced her into the alley he stopped her at a point where she said there was a dark place, and he, after looking up and down the alley and as there was no one in sight, made known to her his design. There was a struggle in which he pulled her jacket off and disarranged her clothing, but being in fear of the pistol which was constantly kept on her, she was finally overcome, and he accomplished his purpose. After the ravishment he said he would kill her to keep her from telling the police; however, looking again to see that the alley was clear he said, "Get on up the alley; if you look back I will shoot, and I'll give you two or three seconds to get up that alley." Prosecutrix at once went to the Kentucky Grill, where she appeared screaming and hysterical. Detectives and police were called, and after obtaining a description of her assailant, accompanied by prosecutrix, began a search of places at which it was believed the accused might be found. Not finding him at any of these places, they went to police headquarters, where the prosecutrix had no difficulty in identifying a picture of appellant.

About 1:20 a. m., the same night, appellant was apprehended, and taken to jail. Prosecutrix was with the officers when appellant was apprehended and unhesitatingly identified him as being the man who had assaulted her. The officers found at a room where accused

had been staying, some pictures, a comb, and nail file, which prosecutrix identified as her personal belongings. These were found in a garbage can, and on the roof of a garage her pocketbook was found. The officers also obtained at another place a sweater worn by appellant, and his pistol. Black was apprehended later.

After Black was apprehended and taken to jail, he told what had been done up to the beginning of the robbery of prosecutrix. When arraigned, appellant admitted the robbery, but denied further guilt. On the night of March 29, Black advised the officers that accused had told him the details of his attack on prosecutrix. This statement was given to the officers on the night mentioned, and going to accused's cell they read the statement to him and said, "If you want to confess all right, and if you don't all right." He was then taken to headquarters and made a confession, which was taken down by an officer, and later reduced to typewriting. This was presented to him, and after reading it over, was signed by·him. The confession in detail is of such nature and so repugnant that its contents will not be reproduced, it being sufficient to say that the written statement comports in the main with the testimony of prosecutrix and William Black. It may, perhaps, become necessary to recount some of the details in taking up the numerous grounds advanced for reversal, which will be taken up in the order presented by defendant's counsel.

In grounds one and two, which may be considered jointly, it is argued that the court erred in overruling (a) appellant's motion to quash the indictment, and (b) to set aside the impaneling of the jury, both based on the alleged exclusion of members of the colored race, because of their race, from the grand jury which returned the indictment, and from the jury placed in the box to try appellant's case.

Neither of these motions appear in the record, but in an order overruling the motions it was recited that "counsel in open court filed motion to quash the indictment herein on the grounds that the defendant is denied the equal protection of the law in violation of the Constitution of the United States by the exclusion of negroes from the grand jury which returned the indictment herein, and motion to quash the trial venire by exclusion of negroes from the petit jury service."

These motions do not, nor does anything elsewhere in the record, point out to the court whether the alleged exclusion, if there was such, was due to a statute, act of the trial judge, or any officer connected or having to do with the making up of jury lists, or in the selection, summoning, or impaneling of the jury. The methods and manner of selection of juries, both grand and petit, are to all practical purposes similar, as will be noted by a reference to Ky. Stats., secs. 2241 to 2281a-1, inclusive, and a reading thereof will lead to the conclusion that nothing in these statutes savors of any exclusion or discrimination against any race or sect. The qualifications of jurors, grand and petit, are set out in sections 2248, 2253, Ky. Stats.

So far as we observe, there is a total absence of anything contained in the motions which would bring to the court cognizable notice that persons of any race, and particularly the race to which accused belongs, had been excluded from service on either of the juries. Nor was there any affidavit made, proof or testimony offered, which would put the commonwealth to denial, or permit the court to consider or pass on the motions or either of them. Under these circumstances, this court is in no position to say that the trial court committed error, but on the other hand, can well say that in the absence of the essential proof the court did not commit error in these respects. Some of the cases which counsel for appellant cite demonstrate the necessity of bringing to the attention of the trial court facts in some form, so as to permit an intelligent ruling.

These cited cases are: Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839; Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Gibson v. Mississippi, 162 U. S. 565, 16 S. Ct. 904, 40 L. Ed. 1075; Rogers v. Alabama, 192 U. S. 226, 24 S. Ct. 257, 48 L. Ed. 417; Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 339, 50 L. Ed. 497; Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; Bush v. Kentucky, 107 U. S. 110, 1 S. Ct. 625, 27 L. Ed. 354; Norris v. State of Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; Patterson v. State of Alabama, 294 U. S. 600, 55 S. Ct. 575, 79 L. Ed. 1082; Aldridge v. U. S.,

283 U. S. 308, 51 S. Ct. 470, 75 L. Ed. 1054, 73 A. L. R. 1203.

In order to determine whether there was anything in any of these cases which might indicate that the Supreme Court had held directly or indirectly that the question might be raised here, or in that court, in the manner here presented, without proof in support of a mere allegation by motion, we have reviewed these cases and have found the contrary to be true.

In the first case cited, Carter v. Texas, supra, in which the court below refused to hear evidence in support of a similar motion, it is made apparent that it was essential that testimony to sustain allegations made should be heard. In Martin v. Texas, supra, there was a motion to quash an indictment, the ground being the same as here, and though the motion was verified, the court held that the motion itself could not be regarded as proper proof. The court said:

> "The grounds assigned for quashing the indictment should have been sustained by distinct evidence introduced, or offered to be introduced, by the accused. He could not, of right, insist that the facts stated in his motion to quash should be taken as true simply because his motion was verified by his affidavit. The motion to quash was therefore, unsupported by any competent evidence consequently, it cannot be held to have been erroneously denied."

Neither Strauder v. West Virginia nor Neal v. Delaware, supra, older cases, in which grounds for reversal were based on statutes which by their own terms operated to work a clear discrimination, have application here. Rogers v. Alabama, supra, involved the lower court's action in striking a motion because of prolixity, and denying the right to introduce proffered evidence. Powell v. Alabama, supra, involved, as finally decided, the court's "casual action or nonaction in furnishing counsel to represent defendant," the matters charged arising in and before the court, and in which it appears the court was an actor.

In Patterson v. State of Alabama and Norris v. State of Alabama, supra, the court's determination turned on questions of fact elaborately presented and countered. Aldridge v. U. S., supra, was determined

on matters shown by the record as having taken place before the court, the main ground for complaint having been the refusal of the court to permit counsel to examine the jurors upon voir dire, touching their prejudices or lack of same toward one of another race.

In all these cases the objections were correctly reserved and presented. After a careful review of the above-cited cases, and others in our jurisdiction, we are clearly of the opinion that complaints 1 and 2 offer no ground for reversal.

However, counsel urges in his brief that since the trial judge "considering his long practice before the Kenton County Court, having never seen nor heard of a colored person serving on a jury, within his memory," must perforce take or have judicial notice of a "systematic and arbitrary exclusion of qualified negro citizens from jury service, solely because of their race and color."

This contention, if thought sound, would have this court go a long way in applying the doctrine of judicial notice. Even if the trial judge, having practiced for a long time at his bar, and having noticed, if it were true, that colored persons were not called to jury service, must, in order to bring to the court judicial knowledge, formulate in his mind a conclusion, first, that there were such persons qualified; second, that they had been systematically and arbitrarily excluded; and, third, that the exclusion was solely because of their race. The averments of the motion are not such as to bring the charge alleged within the range of judicial notice. The classes of fact of which such notice may be taken are those which are judicial, legislative, political, historical, etc., and matters arising in the ordnary course of nature or general current human affairs. When they are of the latter class, the knowledge must rest upon admitted notoriety for their claim to judicial recognition. Wade on Notice, sec. 1403, quoted in Riley and Bealmear v. Wallace, Judge, 188 Ky. 471, 474, 222 S. W. 1085. See, also, Com. v. Gabhart, 160 Ky. 32, 169 S. W. 514. There is no intimation that such knowledge existed. Besides, the Supreme Court cases cited above rather refute the notion the court might take judicial knowledge to the extent here claimed, as do cases in our own jurisdiction, hereinafter cited.

The third ground presents the argument that the court erred in admitting the typewritten confession of accused because the unproduced original was the best evidence. After Black had been told that appellant was charging him with the crime, he said that accused had told him of the attack on prosecutrix. The officers informed accused that Black had made such statement. Accused then agreed to and did make a confession. This was written with pencil and later reproduced on a typewriter, handed to appellant, read to him, and he signed it voluntarily.

Counsel insists that the typewritten copy was incompetent proof; that the original should have been produced, or, to make the typewritten sheets competent, the loss of or a failure to produce the original should be explained (which was done). Counsel cites the rule that where a confession has been committed to writing, the writing must be produced as the best evidence, unless its absence is satisfactorily accounted for, citing Horn v. Com., 258 Ky. 718, 81 S. W. (2d) 576, and other cases and texts holding to the same rule. There would be some force in the argument if it were made to appear that accused had written the statement himself and signed it, or if written by someone else in or out of his presence and he had signed it, and a copy substituted. Accused did not write or sign the penciled notes. The "original" spoken of was nothing more or less than the memoranda from which the officer made a copy, which was read to and signed by accused with objection. The paper filed was the original.

The fourth ground is an attack on the confession because it is asserted that same was produced by force and duress. The only reasons assigned in support of this contention are, that the defendant twice denied the charge of rape, and that he only made the confession after he had been in solitary confinement for a period of six days, and that it was taken at 4 o'clock in the morning. It does not appear from the record that the prisoner was kept in solitary confinement. The contrary appears to be true. Admitting, for the sake of discussion, that the facts are as contended, their cumulation does not amount to duress or force. In nowise do they come within the condemnation of section 1649b-1 et seq., Ky. Stats. commonly known as the "anti-sweating" act.

From a reading of the record, in so far as it relates to this phase of the case, the officers were particular to advise accused of the possible results of his confession; they in nowise abused, coerced, or threatened him, and they and he say the statement was made voluntarily. The following authorities justify our conclusions of no error on this contention: Eaton v. Com., 235 Ky. 466, 31 S. W. (2d) 718; Barton v. Com., 238 Ky. 356, 38 S. W. (2d) 218; Caruth v. Com., 251 Ky. 143, 64 S. W. (2d) 495; Bennett v. Com., 242 Ky. 244, 46 S. W. (2d) 84.

We now come to ground five, which charges such misconduct on the part of the commonwealth's attorney as resulted in prejudice to the rights of the accused. Nowhere in the record, save in motion and grounds for new trial and affidavits of counsel in support thereof, does there appear any reference to alleged misconduct of the commonwealth's attorney, and neither in the motion nor in the affidavit nor elsewhere is it shown or claimed that the remarks charged were called to the attention of the court by objection, with exception saved. In this state of case the objection now urged is not subject to review. Reed v. Com., 235 Ky. 734, 32 S. W. (2d) 38; Fugate v. Com., 254 Ky. 663, 72 S. W. (2d) 47.

Counsel next suggests that the court told the jury to return a verdict in ten minutes or be sequestered for the night. On this point there is no showing in the record that this occurred, nor do counsel argue it in their brief. (See above-cited cases.)

The next ground is that the verdict of the jury is contrary to law and against the weight of evidence.

The testimony of prosecutrix was clear, unequivocal, and convincing. She related in detail the occurrences of the night, to such an extent as to show completely the commission of the offense charged. She did not hesitate in positive identification of accused. The accused did not testify; on the other hand, he admitted the attack, and his recitation of occurrences did not vary from the testimony of prosecutrix.

Next is the alleged admission of incompetent evidence. A careful review of the bill of evidence demonstrates that there was no error in this respect. It is urged in brief for appellant that the court erred in

admitting the confession of Black. The record very distinctly shows that when the commonwealth offered in evidence Black's confession, upon objection by counsel for appellant, the court sustained that objection. No argument is presented in support of this alleged error, and since it appears that the alleged confession did not reach the jury, there was no error.

It is urged that the court failed to instruct the jury as to the weight that should be given to the testimony of Black, it being said that since he was an accomplice, the failure to do so was in violation of section 241 of the Criminal Code of Practice, which prohibits a conviction upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the accused with the commission of the offense, and that the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances attending. Reviewing this contention, it may be pointed out that Black was not an accomplice in the commission of the offense charged, if indeed he was an accomplice to the robbery which preceded the assault. The testimony is such that it is undeniably made to appear that accused and Black started through the alley and saw prosecutrix in the parking lot, and when Black heard accused accost prosecutrix he walked on and as soon as he reached the end of the alley, ran. He did not see what happened after that time. If the question before us was whether or not he was an accomplice in the robbery, technically we might decide that he was, but from all the proof we cannot go to the extent of holding that he was in any sense an accomplice in the commission of the offense under investigation. Accused does not make Black an accomplice. It is clearly shown in his confession that he was the sole actor, both in the robbery and assault, and he says he did not see Bleck until they met later at Eighth and Washington streets. There was no objection to Black's testimony, or any portion of it, on the grounds that he was an accomplice.

There was no suggestion of conspiracy. Appellant and Black were not jointly indicted. From a reading of the testimony, it does not appear that there was any preliminary arrangement, even as to the robbery. The opportunity to rob seems to have been the result of the accidental meeting; so it seems also that the idea

to assault by appellant was formulated after Black had left the scene.

An accomplice is one who participates in a criminal act, and one of the tests of his status is to judge from all the evidence whether such would be sufficient to sustain a conviction of the witness. An accomplice may be an accessory before the fact, an aider or abettor, but an accessory after the fact is not an accomplice. Elmendorf v. Com., 171 Ky. 410, 188 S. W. 483; Anderson v. Com., 193 Ky. 663, 237 S. W. 45. Above and beyond what we have thus far said, we will add that Black's testimony was amply corroborated.

A review of many decisions of this court will demonstrate that contentions similar to those so vigorously presented here, where the record showing was the same or similar, have been decided adversely, the court consistently ruling that a failure to properly present objections and save exceptions cannot be supplied by this court. Deboe v. Com., 257 Ky. 792, 79 S. W. (2d) 236; Dewberry v. Com., 241 Ky. 726, 44 S. W. (2d) 1076; Carsons v. Com., 243 Ky. 1, 47 S. W. (2d) 997; Payne v. Com., 255 Ky. 533, 75 S. W. (2d) 14; Clark v. Com., 58 S. W. 429, 25 Ky. Law Rep. 517; Parks v. Com., 145 Ky. 364, 140 S. W. 544; Wolff v. Com. 211 Ky. 62, 276 S. W. 1067; Hughes v. Com., 80 S. W. 197, 25 Ky. Law Rep. 2153; Epling v. Com., 233 Ky. 407, 25 S. W. (2d) 1022.

In conclusion, we may say we have given the record before us the closest scrutiny, overlooking the fact that some contentions raised are not properly before us. We have done so, for the reason that the offense charged is a serious one; the punishment inflicted the severest known to the law. We have been impressed also with the zealousness which counsel have presented their client's cause. However, on the whole case, after surveying it with care, we do not find error prejudicial to appellant's rights.

Judgment affirmed.

Whole court sitting.