## Franklin v. Commonwealth.
(Decided Oct. 27, 1936.)

834

GRAY McLEAN BLANCHARD for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The grand jury of Jefferson county, Ky., returned an indictment against Sam Franklin, Gene Lee, and Arthur Williams accusing them of the crime of robbery, in the perpetration of which they displayed and used a deadly weapon, to-wit, a pistol. The indictment charges that the defendants robbed J. C. O'Connor of his lunch box and contents, including one thermos bottle, a clock, a pair of glasses, and a small sum of money.

Williams and Lee pleaded guilty and were sentenced to life in the penitentiary; Franklin pleaded not guilty, and upon trial before a jury he was found guilty and his penalty fixed at death. A motion and grounds for a new trial were filed and overruled, and, from a judgment entered on the verdict of the jury, Franklin brings this appeal.

Grounds urged for reversal are: (1) That the verdict is not sustained by the evidence; (2) the court erred in admitting improper evidence; and (3) the court should have sustained appellant's motion for a new trial.

O'Connor testified that on the night of the 16th or the morning of the 17th of November, 1935, he was returning to his home from his place of work where he was employed as a night watchman, and at or near the corner of Preston and Pearl streets he was assaulted and robbed. He described the incident in the following language:

"Q. As you went out Preston street tell the gentlemen of the jury on this day just what happened? A. As I was walking along Preston street, I wasn't paying any attention to anything much, I wasn't expecting anything, the first thing I know I had been knocked down and all I remember is when I was just coming to

I could feel somebody going through my pockets. When I stood up there was a fellow there had me by the collar and he had a big revolver in his hand and he was going to strike me or made out as though he was going to strike me. I said, 'Dont do that!' and he looked at me and turned around and run off down Pearl street. I wandered around for—that was about 4:30—between 4:30 and 4:40. I wandered around until after six o'clock, I was dazed. I didn't know where I was going, and finally found my way home."

He said that just before he got up he saw another man going out Preston street with his lunch case in his hand. He could only see the man's back and could not identify him. He described his injuries, which were very severe, and said that he was confined to his home for about 10 days. Dr. G. P. Beutel was called to the home of O'Connor at about 9 o'clock of the morning of the injury, and he stated in substance that O'Connor was in a semiconscious condition and at first he did not recognize him, although he had been his family physician for many years. According to the doctor's testimony, O'Connor was severely injured.

Clarence Graham, a member of the Louisville police force, testified that about 3 o'clock in the morning of the 19th of November he and other companion officers arrested Franklin, Williams, and Lee in an automobile on a charge of violating the traffic rules and driving an automobile without a license, and one of the men had a large revolver. He said that they admitted to them that they were going out to hold up a restaurant. His statement that they admitted that they were going to hold up a restaurant was objected to and the court sustained objections and admonished the jury not to consider that statement for any purpose whatever as evidence against the defendant in this case. We will discuss this more fully in our discussion of the evidence.

The officers took Franklin and his companions to jail, and on the next morning they were taken before the police court. The officers had been at Franklin's home just previous to the arrest above mentioned and saw a thermos bottle, and perhaps other articles of which O'Connor had been robbed, there in Franklin's room. The officers suspected that these three men might be the ones who robbed O'Connor, and they took them to

his home to see if he could identify them. When they were taken in O'Connor's presence, at first he was not certain that he could identify them as being his assailants, but after a careful view of them he positively identified Franklin as being the man who was standing in front of him with the drawn revolver in the manner described in his testimony quoted above. The officers then went to Franklin's home and found the thermos bottle and clock sitting on the table and the lunch kit lying on the floor under the bed. The testimony of two other officers who were with Graham is in substance about the same as that of Graham relating to the arrest of defendants and the identification of Franklin by O'Connor and the recovery of the property of which O'Connor had been robbed. O'Connor was recalled and identified the thermos bottle by a certain mark on it.

Franklin testifying in his own behalf denied that he was connected with the robbery or knew anything about it. He also denied that O'Connor identified him as being one of the men who robbed him. He said that, when the officers asked O'Connor if "these were the men who robbed him," O'Connor said "No." He said that when he got up one morning he saw the lunch case, thermos bottle, and clock on the table in his home and he opened the case and looked in it and saw a paper in it that had O'Connor's name on it and he did not say any more about it until the officers arrested him, and he then told the officers about these articles being in his house and the officers asked him who brought them there, and he told them that Gene Lee brought them there and that Gene Lee was in the car at the time and admitted that he took these articles to his house. No other witnesses were introduced in Franklin's behalf and we have only his testimony. The arresting officers were called in rebuttal for the commonwealth and denied that Franklin told them about these articles being in his house at the time he was arrested, but that after he was identified by O'Connor was the first time he mentioned it.

It is insisted for Franklin that, it being dark when O'Connor was assaulted and robbed, according to his own testimony and that of Dr. Beutel he was dazed and in an unconscious or semiconscious condition, it is incredible and unreasonable to believe that he could have identified Franklin.

These conditions and circumstances might cast doubt in the minds of some people, but it must not be overlooked that the jury was the sole judge of the credibility of the witnesses and the weight to be given the evidence, and the fact that there might be a difference of opinion of the evidence does not furnish grounds for reversal. It is the universally accepted rule that, where there is any evidence of a probative or substantial nature tending to establish the guilt of an accused, though it may be slight, the courts will not disturb the verdict of the jury. O'Connor was very positive in his identification of Franklin at the time the officers took him to his home, and he also identified him in the courtroom at the time of the trial. He said he did not know who struck him, but pointed to Franklin as being the man who was standing in front of him with the drawn revolver, and, in addition to O'Connor's identification of Franklin, there is an abundance of other evidence tending to show that he was implicated in the robbery. The property of which O'Connor was robbed was found in Franklin's possession, and his explanation with reference to how it came to be there is not very persuasive. Once the positive and direct evidence is viewed in the light of all the circumstances, it is at once obvious that the evidence is amply sufficient to support the verdict of the jury.

The incompetent evidence complained of is the statement of Clarence Graham that when they arrested the defendants they admitted that they were going to hold up a restaurant. It is insisted that that statement prejudiced the jury against appellant, notwithstanding the admonition of the court not to consider it. In Huber & Huber Motor Express Co. v. Martin's Adm'r, 265 Ky. 228, 96 S. W. (2d) 595, 598, the rule is stated thus:

"'The general rule contemplates that in every case in which the objecting party conceives an argument of counsel to be improper, after his objection is overruled, he should bring to the attention of the court the insufficiency or the impropriety of its ruling and suggest or request a further or additional action on the part of the court.''

The question involved in the case supra was the alleged improper argument of counsel, but the same rule is applicable to evidence or other like matters. It will

also be noticed that the Huber case is a civil action, but the same rule is applicable to criminal cases. See, also, Dewberry v. Com., 241 Ky. 726, 44 S. W. (2d) 1076, wherein the rule is stated with reference to questions similar to the one here involved.

It is also the rule that, when the court sustains objections to testimony and admonishes the jury not to consider it, the presumption is that the jury followed the admonition of the court, except, however, in extreme cases, and we do not think the present case is an exception to the rule, even though a motion had been made to discharge the jury or other proper steps taken. It does not appear that the attorney for the commonwealth intentionally solicited the statement complained of from the witness but the witness voluntarily made the statement.

We now come to a consideration of the motion and grounds for a new trial. There were certain affidavits filed in support of the motion, and some of the witnesses were examined orally in open court and their evidence taken by the court reporter and transcribed and made a part of the record. Gene Lee testified that Franklin was not connected with the robbery and that he knew that Franklin was not there at the time O'Connor was robbed and said that Arthur Williams was connected with it. He was not asked, nor did he state, whether or not he was connected with it. On cross-examination by John O. Arnold, assistant commonwealth's attorney, Lee was asked about a conversation with Arnold just previous to the trial or while the trial was in progress, in which Lee stated to Arnold that on the morning of the robbery he, Lee, Franklin, and two other boys were riding in an automobile and saw O'Connor walking along the street with a suitcase and one of them remarked, "I wonder what that old man has got in that suitcase," and Franklin said, "Let's go find out," and they drove the car around the corner and parked it and Franklin and another one of the boys got out of the car and intercepted O'Connor and assaulted him and robbed him. Lee denied making the statement.

Arnold was introduced in rebuttal and testified in substance that Lee made the statements to him indicated in question above. Clarence Graham and Frank M. Fitzgerald, testifying in rebuttal, also stated that

they were present and heard the conversation between Mr. Arnold and Gene Lee as detailed by Arnold, and they corroborated Arnold, stating in substance that Lee made the statements testified to by Arnold. There also appears in the record the affidavits of the appellant, Franklin, Jessie Conn, and Willie Mae Hagan. Franklin stated in his affidavit that he was a poor man and had been confined in jails since his arrest and could not assist in the preparation of his case to the extent as was necessary and that the newly discovered evidence was not discovered before the conclusion of his trial, notwithstanding the exercise of reasonable diligence on his part. Jessie Conn stated that she was living at the home of Franklin at the time of the robbery and on that morning she saw Gene Lee bring into Franklin's home the lunch kit and thermos bottle alleged to have been taken from O'Connor and that she knew of her own personal knowledge that Franklin was in the bed asleep at that time and had been since 7:30 o'clock of the preceding evening. It is shown by the evidence that Franklin and Jessie Conn were living together at that time, but they were not married. She said that she was ready and willing to testify to these facts at the time of the trial of Franklin but she was not approached by any attorney or counsel for defendant and she was incorrectly advised as to the date of his trial. If this witness' affidavit be true, evidently Franklin knew of the facts disclosed in her affidavit but he discloses no reason why he did not have her summoned as a witness or otherwise endeavor to procure the benefit of her testimony. Such does not indicate diligence on his part.

It is the well-settled rule that the granting or refusing to grant a new trial is within the sound discretion of the trial court, and its action taken in reference thereto will not be reversed by this court except in cases in which it appears that a sound discretion is abused. Neeley v. Com., 236 Ky. 74, 32 S. W. (2d) 552; Jones v. Com., 238 Ky. 453, 38 S. W. (2d) 251.

We do not think the court exercised an abuse of discretion in refusing to grant a new trial.

Finding no prejudicial error, the judgment is affirmed.

Whole court sitting.